# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

JOHN H. CHOQUETTE, JR. *vs.* RICHARD ISACOFF.

No. 04-P-1519.

Berkshire. June 8, 2005. - October 27, 2005.

Present: PERRETTA, DREBEN, & GELINAS, JJ.

*Joint Tortfeasors. Attorney at Law,* Malpractice.

In a legal malpractice action brought by a former client against his bankruptcy attorney, seeking damages arising from the bankruptcy trustee's adversary proceeding against the former client due to the client's untrue and inaccurate disclosures in the course of the bankruptcy proceedings, the judge properly granted summary judgment in favor of the attorney, where the client's participation in the wrongdoing barred him from recovering damages for any resulting loss under the doctrine of in pari delicto, and where the exceptions to the doctrine were inapplicable in the circumstances. [3-8]

CIVIL ACTION commenced in the Superior Court Department on December 2, 2002.

The case was heard by *Daniel A. Ford,* J., on a motion for

summary judgment, and a motion for reconsideration was also heard by him.

*Terry M. Ford* for the plaintiff.

*Michael K. Callan* for the defendant.

GELINAS, J. John H. Choquette, Jr., appeals the grant of a motion for summary judgment in favor of his former attorney, Richard Isacoff. Choquette claims the motion judge erred in extending the doctrine of in pari delicto to a case of legal malpractice. Choquette additionally appeals the denial of a subsequently filed motion for reconsideration. We affirm.

Choquette retained Isacoff to assist him in dealing with a pending judicial sale of his assets to satisfy a civil judgment. Isacoff prepared, and Choquette signed under pains of perjury, a skeleton bankruptcy petition, that is, one not containing schedules of assets and liabilities, pursuant to Chapter 7 of the United States Bankruptcy Code. Filing the petition with the United States Bankruptcy Court for the District of Massachusetts halted the judicial sale of some of Choquette's properties. Choquette later signed schedules purporting to list all of his assets and liabilities. These schedules were also signed under pains of perjury. Choquette was advised by Isacoff's secretary that the schedules could be amended if they were not true and accurate. A decision was made to go forward with the Chapter 7 proceedings, and a hearing was scheduled before the Bankruptcy Court.

Prior to the hearing, Choquette became aware of certain omissions in the schedules, and alerted Isacoff to the discrepancies. Among other things, the schedules listed Choquette's current income at "0," although he received a substantial amount of monthly income from a variety of personal real estate trusts. The schedules were not corrected. At the bankruptcy hearing, testifying under oath, Choquette gave false answers to questions concerning his income. In response to questions concerning income from real estate, he failed to correct the information contained in the schedules and testified that his sister, and maybe his daughter, were the beneficiaries of the trusts and received the income.

Becoming aware of the false information, the Chapter 7 trustee filed an adversary proceeding against Choquette. The

trustee's complaint listed five counts: objection to discharge; fraudulent conveyance of real estate; fraudulent conveyance of stock; turnover of real estate; and turnover of stock. Choquette subsequently entered into an agreement for judgment in favor of the trustee. As to the objection to discharge, Choquette agreed to a judgment against him under 11 U.S.C. § 727(a)(3); this provision denies discharge where the debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information." 11 U.S.C. § 727(a)(3) (2000). Choquette additionally agreed to the entry of a judgment against him on the counts of fraudulent conveyance of real estate and fraudulent conveyance of stock, if he failed to comply with the terms of the agreement based on the trustee filing an affidavit of noncompliance.

With new counsel, Choquette brought this action in Superior Court against Isacoff, asserting breach of contract; misrepresentation, fraud, and deceit; breach of implied warranty of workmanlike performance; negligence; and violations of G. L. c. 93A. In a deposition with respect to this case, Choquette claimed that as a result of his interactions with Isacoff, he did not give complete and full disclosure, resulting in untrue and inaccurate disclosures to the trustee. Isacoff moved for summary judgment, claiming that Choquette's claims were barred by the doctrines of in pari delicto and res judicata. In allowing the motion, the judge endorsed the motion "[e]ssentially for the reasons set forth in Section II(B) of the defendant's memorandum of law." Section II(B) of the memorandum sets out Isacoff's claim that Choquette should be denied recovery as he was in pari delicto.

We conduct our review of the grant of a motion for summary judgment according to familiar standards, to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Locator Servs. Group, Ltd.* v. *Treasurer & Recr. Gen.*, 443 Mass. 837, 845 (2005).

The doctrine of in pari delicto bars a plaintiff who has participated in wrongdoing from recovering damages for loss resulting from the wrongdoing. See *Scattaretico* v. *Puglisi*, 60

Mass. App. Ct. 138, 140 n.6 (2003) (the doctrine "suggests that one in tortious league with another is generally without remedy against the other"). The doctrine, of long standing, rests on the theory that courts will not lend aid to parties who base their cause of action on their own immoral or illegal acts. See *Atwood* v. *Fisk*, 101 Mass. 363, 364 (1869). As stated in *Gray* v. *Boston Gas Light Co.*, 114 Mass. 149, 154 (1873), the doctrine provides that "[w]hen two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the act cannot have indemnity or contribution from the other, because both are equally culpable, . . . and the damage results from their joint offence." See *Stewart* v. *Roy Bros.*, 358 Mass. 446, 458-459 (1970).

In Massachusetts, the rule has its usual application with respect to the attempted enforcement of illegal contracts, and in equitable proceedings where both parties come before the court with unclean hands. See, e.g., *Bryant* v. *Peck & Whipple Co.*, 154 Mass. 460, 461 (1891); *Lyons* v. *Elston*, 211 Mass. 478, 482 (1912); *Berman* v. *Coakley*, 243 Mass. 348, 350 (1923); *Nussenbaum* v. *Chambers & Chambers Inc.*, 322 Mass. 419, 421-422 (1948). See also Restatement (Second) of Contracts §§ 197-198 (1981).

With respect to this rule, as with most others, there are exceptions. One well established exception to the doctrine of in pari delicto provides that "where the parties are not in equal fault as to the illegal element[,] . . . or . . . are not *in pari delicto*, and where there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty." *Council* v. *Cohen*, 303 Mass. 348, 354 (1939), quoting from *Berman* v. *Coakley*, 243 Mass. at 350. Another exception involves "cases where the public interest requires that [the courts] should, for the promotion of public policy, interpose, and the relief in such cases is given to the public through the party" (citation omitted). *Id.* at 354-355. As Justice Story states in Commentaries on Equity Jurisprudence,

"in cases where both parties are in delicto, concurring in an illegal act, it does not always follow that they stand in

pari delicto; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offence. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be."

1 Story, Commentaries on Equity Jurisprudence § 423, at 399-400 (14th ed. 1918) (footnotes omitted). See *Berman* v. *Coakley*, 243 Mass. at 350. Thus, relief in equity may be obtained where there is an inequality of position between the wrongdoers, or where public policy dictates.

There has been no instance in Massachusetts in which the doctrine of in pari delicto has been applied in a legal malpractice action where both the attorney and the client conspired in the wrongdoing. Several other States, however, have considered in pari delicto in this context, and have applied the rule, and not the exception, in cases where a claim of legal malpractice is brought by clients seeking damages from their attorneys, and where the clients engaged in dishonest or immoral practices in the matter.

In *Pantely* v. *Garris, Garris & Garris, P.C.*, 180 Mich. App. 768 (1989), the Michigan Court of Appeals determined that a client could not recover from her attorneys in a malpractice action, where the client perpetrated a fraud on the court by lying under oath about her residency status in a divorce action, even though she so testified upon advice of her attorneys. *Id.* at 770-771. The court determined that the client was in pari delicto with her attorneys, and that she should "bear the untoward consequences of [her] wrongdoing without legal recompense or recourse." *Id.* at 774. As to the client's argument that an exception to the doctrine should apply, since she lied at the direction of her attorneys, the court determined that simple perjury is not the type of action contemplated by the exception. *Id.* at 775-776. "We can readily envision legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of

not being equally at fault. But perjury is not complex; and telling the truth poses no dilemma." *Id.* at 776.

In *Evans* v. *Cameron*, 121 Wis. 2d 421 (1985), the Wisconsin Supreme Court upheld the dismissal of a complaint based on the doctrine of in pari delicto, where the plaintiff filed suit against her attorney asserting that she suffered damages and faced prosecution for perjury, because she followed the advice of her attorney and lied under oath at a creditors' meeting in a bankruptcy proceeding. *Id.* at 423-424. The attorney had advised the plaintiff to state that she had given $10,000 in cash to her mother, when in fact she had retained the money. *Id.* at 424. The court held that the plaintiff had failed to allege "any circumstances of oppression, imposition, hardship, undue influence, great inequality of condition or the like," which would satisfy an exception to the doctrine. *Id.* at 427. In so deciding, the court stated, "[t]he wrongfulness of lying while under oath . . . is apparent. Absent some allegation of special circumstances constituting an exception to the rule . . . , the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie." *Id.* at 428. The *Evans* court also addressed the public interest exception, concluding that there was no overriding public policy interest at stake. *Ibid.* "Although the public interest is served by discouraging attorney misconduct, it would be inappropriate to promote that interest by removing the damage to those who deliberately and willfully lie under oath in bankruptcy proceedings. A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught." *Ibid.*

In *Robins* v. *Lasky*, 123 Ill. App. 3d 194, 201-202 (1984), the Illinois Appellate Court upheld an order dismissing a complaint for legal malpractice against an attorney who advised the plaintiff to relocate and establish his permanent residence in another State, in order to avoid service of process in Illinois. The *Robins* court applied the long-established rule that "courts will not aid a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages." *Id.* at 201,

quoting from *Mettes* v. *Quinn*, 89 Ill. App. 3d 77, 80 (1980). The plaintiff in *Robins* could not recover, because he "voluntarily elected to follow advice intended to extricate [himself] from a questionable situation." *Id.* at 202. He came to court "with 'unclean hands,' seeking relief from [his] wrongful conduct." *Ibid.*

The undisputed facts here indicate that Choquette committed perjury in testifying at his bankruptcy hearing. While Choquette claimed in his deposition that he was aware that the bankruptcy forms he signed were incomplete as of the date of the hearing, and that he had tried to make Isacoff aware of the mistakes prior to the hearing, at the hearing, while under oath, Choquette made false and inaccurate statements. Furthermore, following the hearing, the trustee filed an adversary proceeding with the Bankruptcy Court alleging, in part, that Choquette violated 11 U.S.C. § 727. Choquette did not dispute that charge and, in September of 2001, entered into an agreement for judgment denying discharge pursuant to 11 U.S.C. § 727(a)(3).

We conclude as well that the exceptions to the doctrine are inapplicable in this case. Choquette claims he was unduly influenced by Isacoff. Choquette argues that given the complexity of bankruptcy law, he relied on Isacoff and was unaware that Isacoff's advice was improper. These arguments ignore the facts that Choquette was well aware of his income and that his testimony was plain and simple perjury. We agree with the *Pantely* court that perjury is not the type of action contemplated by the exceptions. *Pantely* v. *Garris, Garris & Garris, P.C.*, 180 Mich. App. at 776. It is clear from the record that Choquette knew he was not making full disclosure and that he continued to resist making full disclosure, even before receiving a "kick" under the table from his attorney during a bankruptcy hearing. We do not believe that a kick under the table rises to the level of "oppression, imposition, hardship, undue influence, great inequality of condition or the like," such that this exception to the doctrine should apply. *Evans* v. *Cameron*, 121 Wis. 2d at 427.

Choquette further claims that public policy should hold lawyers accountable for legal malpractice in complex areas of the law

where the public relies upon the attorney to give competent legal advice. We determine that in this case no overriding public policy interest exists. An "attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action," as opposed to clients filing suit against the attorney to recover damages incurred due to being caught. *Id.* at 428.

Summary judgment was properly granted, and the motion for reconsideration was properly denied.

> *Judgment affirmed.*
>
> *Order denying motion for reconsideration affirmed.*