Krupp, Peter B., J.
This action is before the court on a motion by defendants Costantino Richards Rizzo, LLP and Paul E.. Costantino for judgment on the pleadings under Mass.R.Civ.P. 12(c). After hearing on March 14, 2013, and having reviewed the supplemental filings by the parties, the motion is DENIED. In light of the fact that it took the court more than four months to schedule the motion for hearing, during which time the court (Henry, J.) stayed discovery, the court includes in its order new tracking order dates.
BACKGROUND
Under the Rule 12(c) standard, the court takes judicial notice of the federal court filings attached to the defendants’ answer,[3] and accepts as true the following allegations in the complaint and certain information contained in the federal court filings.
Plaintiffs Christine A. Scola (“Scola”) and Joseph A. Pingaro, Jr. (“Pingaro”) are a married couple, who operated a business known as J&J Metals (“J&J”) in Roxbuiy, Massachusetts. J&J collected'scrap metal, stored it in its scrap yard, and resold it by the truckload to recycling facilities. In the scrap metal business, cash is king. It is used to pay for scrap metal and was expected by J&J’s customers. It was therefore important for J&J to manage its cash flow carefully.
Since they began J&J, the plaintiffs relied on defendant Paul E. Costantino (“Costantino”), an accountant, and his firm, defendant Costantino Richards Rizzo, LLP (“the Firm”), for advice about J&J’s cash management needs. Neither of the plaintiffs were particularly sophisticated in financial matters. Pingaro only completed the ninth grade.[4] Scola worked mostly as a housewife. They both relied on the defendants to advise them.
Costantino and the Firm consistently advised the plaintiffs at various times to keep all of J&J’s cash transactions below $10,000 to avoid having their activities reported to the federal government. The defendants advised that keeping cash transactions below $10,000 was a good business practice because it would decrease the likelihood of an Internal Revenue Service audit, with its attendant waste of time and expense. Plaintiffs followed this advice, routinely withdrawing just under $10,000 in cash from Scola’s credit union. Unbeknowst to the plaintiffs, however, taking the defendants’ advice meant committing the federal crime of “structuring” in violation of 31 U.S.C. §5324(a).[5]
After following the defendants’ advice openly for several years, on April 2, 2009, the plaintiffs were indicted by a federal grand jury on, among other things, 55 substantive counts of structuring in violation of 31 U.S.C. §5324(a) and one count of conspiracy *34 to commit structuring.[6] Because structuring is a general intent crime, it required no proof that the Pingaro or Scola knew that it was unlawful to engage in such conduct, or that they intended thereby to defraud the United States. The charge of conspiracy to commit “structuring” imported no greater intent element. See, e.g., United States v. Feola, 420 U.S. 671, 696 (1975); United States v. Blair, 54 F.3d 639, 641-43 (10th Cir.), cert, denied, 516 U.S. 883 (1995).[7]
In 2011, pursuant to a plea agreement, Pingaro and Scola entered guilty pleas to only two counts of the Indictment: Count 1 (conspiracy to commit tax fraud) and Count 10 (conspiracy to commit the offense of structuring).[8] With respect to Count 1, Pingaro and Scola both admitted that they knowingly filed false tax returns, submitted to the accountant false costs of the business, and conspired with each other to file false tax returns. See Tr. at 29, 32.
With respect to the conspiracy to commit structuring, both Pingaro and Scola denied knowing their conduct was unlawful. The advice they claimed to have received from the defendants appeared prominently. Specifically, during the plea colloquy, Pingaro’s attorney told the district court: “As the Court is aware from prior hearings, had the matter gone to trial, we believe that there would have been testimony from Mr. Con-stantino [sic] that he gave advice to keep the cash transactions under $10,000, and, according to his statements to the government, for purposes of avoiding an audit. The government takes the position, given the amendments to the statute post- United States v. Ratzlaff [sic], that the crime is a general intent crime and you need not have had a specific intent. It is that [ ] reading of the statute to which Mr. Pingaro is pleading guilty.” Thus, Pingaro, and apparently Scola, admitted only to agreeing to structure transactions beneath $10,000 to avoid reporting to the federal government, even though they believed, based on the accountant’s advice, that such conduct was legal. Tr. at 30-31, 32.
In February 2012, Pingaro was sentenced to four years in the custody of the U.S. Bureau of Prisons. Scola was sentenced to two years of probation, six months of which was to be served in a halfway house.
On April 2, 2012, three years after they were indicted, Pingaro and Scola filed this action. In it, they assert claims for negligence, negligent misrepresentation, breach of contract, breach of fiduciary duly and negligent infliction of emotional distress, arising out of the alleged advice they received from Costantino and the Firm in connection with the structuring of cash transactions just below the $10,000 reporting threshold. They do not assert claims in connection with the filing of the false tax returns for 2002 through 2005.
Defendants now move for judgment on the pleadings based on two of their many asserted affirmative defenses. First, defendants argue that plaintiffs are at least as culpable as the defendants and therefore the doctrine of in pari delicto bars this action. Second, they contend that plaintiffs’ action is barred by the applicable statute of limitations. The court addresses each of these arguments in turn.
DISCUSSION Rule 12(c)
A defendant’s motion under Rule 12(c) “is actually a motion to dismiss [that] argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002) (quotation omitted). “Judgment on the pleadings may be entered if a plaintiff fails to present sufficient facts in the complaint to support the legal claims made.” Flomenbaum v. Commonwealth, 451 Mass. 740, 742 (2008). The Appeals Court has recently summarized the standard: ‘The effect of a motion for judgment on the pleadings is to challenge the legal sufficiency of the complaint. For purpose of the court’s consideration of the rule 12(c) motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false. The court can also consider facts of which judicial notice may be taken. Although we may take judicial notice of the docket entries and papers filed in separate cases, we may not take judicial notice of facts or evidence brought out in those separate actions.” Home Depot v. Kordas, 81 Mass.App.Ct. 27, 28 (2011) (quotations and citations omitted). See also Jarosz, 436 Mass, at 530 (court under Rule 12(c) “may take judicial notice of the court’s records in a related action”).
When a defendant moves for judgment based on an affirmative defense, “the facts establishing the defense [must be] definitively ascertainable from the complaint and the other allowable sources of information,” and those facts must “establish the affirmative defense with certitude.” Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (decided under Fed.R.Civ.P. 12(b)(6)), quoting Rodi v. Southern New Eng. Sch, of Law, 389 F.3d 5, 12 (1st Cir. 2004). See also Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008).
B. In pari delicto
The defendants argue that plaintiffs were at least as culpable as the defendants and, as such, their claim should be barred by the in pari delicto doctrine. The phrase “in pari delicto” literally means “in equal fault.” Black’s Law Dictionaiy 806 (8th ed. 2004). In Massachusetts, “[t]he doctrine of in pari delicto bars a plaintiff who has participated in wrongdoing from recovering damages for loss resulting from the wrongdoing.” Choquette v. Isacoff, 65 Mass.App.Ct. 1, 3 (2005). Although this quoted sentence states a broad rule, the defense will not prevail “where the parties are not in equal fault as to the illegal element,” i.e. are not in pari delicto, and “where there are elements of public policy more outraged by the conduct of one than of the other.” Id. at 4, quoting Council v. Cohen, 303 Mass. *35 348, 354 (1939). In various instances, even if both parties are at fault, the parties may have different degrees of guilt, such that the public interest disfavors freeing one party from liability regardless of the culpability of the other. Choquette, 65 Mass.App.Ct. at 4-5, quoting 1 Story, Commentaries on Equity Jurisprudence §423 at 399-400 (14th ed. 1918).
Of necessity, the doctrine of in pari delicto is a fact-based one, more susceptible of determination on summary judgment or at trial. Questions about whether the parties are equally at fault, and what their relative capabilities, roles and knowledge were, are inherently fact-intensive. Thus, not until the last few years have courts applied the Massachusetts in pari delicto doctrine to dismiss cases at the pleading stage, and those were decided by federal courts.[9] See Andrew Schwartz & Euripides Dalmanieras, Developments in the in Pari Delicto Doctrine in Massachusetts, 52-Oct. Boston B.J. 16, 17 & n.6 (2008).
Plaintiffs seek recovery against defendants based on the advice they received in connection with the structuring. They have not alleged wrongdoing by the defendants in connection with the conspiracy to commit tax fraud to which the plaintiffs pled guiliy. The in pari delicto defense looks to the specific acts at issue in the instant litigation, i.e. the structuring conduct based on the structuring advice, and does not look to other alleged, or admitted, wrongdoing by the plaintiffs. Pinter v. Dahl, 486 U.S. 622, 636 (1988) (in pari delicto defense looks to plaintiffs involvement “in the unlawful activity that is the subject of the suit”). Arguments about the plaintiffs’ prior convictions, prior efforts to vacate a conviction, or other criminal conduct charged in the federal criminal case at the same time as the structuring may go to credibility, which has no place in the court’s evaluation of a Rule 12(c) motion, or may affect the ultimate determination of the in pari delicto defense at trial, depending on the role or interrelationship of the plaintiffs’ other actions to the structuring.[10] The court cannot determine those facts at this time.
The defendants ground their argument on three cases, which they contend are directly applicable. Of these cases, only the federal case was decided at the pleading stage. See Choquette, 65 Mass.App.Ct. 1 (decided on summary judgment); AGM Marine Contractors, Inc. v. Canby, Maloney & Co., Inc., 71 Mass.App.Ct. 1119, 2008 WL 1700120 (2008) (decided on summary judgment);[11] and Baena v. KPMG LLP, 453 F.3d 1 (1st Cir. 2006) (decided under Fed.R.Civ.P. 12(b)(6)). See also, e.g., George v. Whitman, 2009 WL4894364 at* 1 (Mass.Super. Nov. 12, 2009) (Henry, J.) (denying summary judgment due to factual disputes related to in pari delicto doctrine) .
More importantly, the cases upon which defendants rely are very different from this case. In Choqu-ette, the plaintiff claimed his lawyer was negligent in failing to correct his bankruptcy schedules to reflect his accurate income. The Appeals Court affirmed summary judgment for the defendants on the in pari delicto doctrine because the plaintiff knew what his income was, knew that his bankruptcy schedules were false and committed perjury in relation to them. 65 Mass.App.Ct. at 7. Thus, the plaintiff in Choquette knew his conduct (which he claimed to have based on the advice of his lawyer) was wrongful. Similarly, in AGM Marine, the plaintiff was convicted after trial of conspiracy to defraud the federal taxing authorities, filing a false income tax return, and tax evasion. He sued his accounting firm, claiming it failed to prepare proper tax returns. In affirming summary judgment for the defendant, the Appeals Court relied on the fact that in proving the plaintiff guilty, the federal government necessarily “had to prove beyond a reasonable doubt that the tax laws ‘imposed a duty on the defendant, that the defendant knew of this duly, and that he voluntarily and intentionally violated that duty.’ ” 2008WL 1700120 at * 1, quoting Cheek v. United States, 498 U.S. 192, 201 (1991). In short, like in Choquette, the defendant in AGM Marine knew that his conduct was unlawful. Accord Gray v. EvercoreRestructuring L.L.C., 544 F.3d at 325-27. Unlike AGM Marine, the civil allegations here do not arise out of the plaintiffs’ violation of the tax laws, but only out the plaintiffs’ structuring conduct, which at the relevant times they have alleged they believed to have been lawful.
In Baena, the U.S. Court of Appeals for the First Circuit affirmed dismissal under Fed.R.Civ.P. 12(b)(6) of a complaint brought by a trustee of a corporation against an accounting firm. In that case, the trustee’s complaint alleged that the corporation’s senior management knowingly and wildly inflated income for the benefit of the corporation, and that the defendant accounting firm failed to alert the independent directors of the corporation. Applying Massachusetts law, the court affirmed dismissal of the trustee’s complaint under the doctrine of in pari delicto because, among other reasons, the trustee stood in the shoes of the corporation, and because the fundamental wrongdoing originated with the corporation and its senior management for which the trustee was responsible. 453 F.3d at 6-8.
This case is different from Choquette, AGM Marine and Baena, at least at this stage, because here the plaintiffs have alleged that they did not believe their actions in structuring their cash transactions were wrong. Unlike the defendants, who are a sophisticated accountant and his firm, the plaintiffs were unschooled in the law regarding cash transactions and reasonably relied on the unqualified and repeated advice they received from the defendants that keeping their cash withdrawals below $10,000 would be a prudent business practice.[12] The court cannot say at this stage as a matter of law that public policy here favors freeing defendants from possible liability for their alleged advice to plaintiffs.
*36 C. Statute of Limitations
The defendants argue that' plaintiffs’ claims are subject to a three-year statute of limitations under G.L.c. 260, §4. They argue that this period began some time before the plaintiffs were indicted, when, the defendants argue, the plaintiffs must have come to learn that they were under investigation. Without deciding whether all of the plaintiffs’ claims are subject to the, three-year statute of limitations, the defendants’ argument fails because the court can make no finding on the existing record that the plaintiffs knew, or had reason to believe or inquire whether, the advice they received about withdrawing cash amounts less than $10,000 was lawful.
While it is possible that the plaintiffs learned they were under investigation prior to issuance of the Indictment, there are no facts alleged in the complaint to support such a conclusion. Moreover, even if they had learned that they were under investigation, they may well have believed that they were under investigation for tax fraud, and not that they had anything to fear from their activities •withdrawing cash in amounts less than $10,000. To the contrary, the plaintiffs have alleged—and the court accepts for these purposes—that the plaintiffs first learned about any problem with their open efforts to only withdraw cash in amounts less than $10,000 when they were indicted.
For these reasons, it is ORDERED as follows:
ORDER
1. Defendant’s Motion for Judgment on the Pleadings is DENIED.
2. The tracking order schedule is modified as follows: (a) discovery to be completed by September 6, 2013; and (b) any motion to be filed under Rule 56 shall be served pursuant to Superior Court Rule 9A by October 4, 2013 and filed by November 1, 2013.
3. The court shall schedule a Final Pretrial Conference in late November. If a Rule 56 motion is filed, the summary judgment motion will be heard at the time set for, and in lieu of, the Final Pretrial Conference.
4. The new dates set herein shall be not be modified except for good cause shown.

The defendants append to their answer a copy of the federal indictment against the plaintiffs in the United States District Court for the District of Massachusetts in United States v. Pingaro etal., Criminal No. 09-10095-PBS (April 2, 2009), and a copy of the transcript of their federal plea colloquy in that case from April 20, 2011 (“Tr.”). The court considers both documents on this Rule 12(c) motion, but does not consider the truth of the underlying facts described in those documents. See Marram v. Kobrick Offshore Fund, Ltd., 442Mass. 43, 45n.4 (2004); Jaroszv. Palmer, 436Mass. 526, 530-35 (2002); Home Depot v. Kordas, 81 Mass.App.Ct. 27, 28 (2011). To the extent the parties’ memoranda contain factual allegations beyond the pleadings and these federal filings, see, e.g., Opposition to Defendants’ Motion for Judgment on the Pleadings at 3, the court does not consider them. See also, infra, at 6.

The court notes, but does not rely on the fact, that during the plea colloquy in federal court Pingaro indicated his ability to read was limited. Tr. at 7.

Section 5324 makes it a crime for any person “for the purpose of evading the reporting requirements of section 5313(a) ... or any regulation prescribed under any such section” to “cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a)” or to “structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.” 31 U.S.C. §5324(a) Section 5313(a) requires “a domestic financial institution” that is “involved in a transaction” involving cash in an amount specified by the Secretary of the Treasury to “file a report on the transaction at the time.” 31 U.S.C. §5313(a). See31 C.F.R. §1010.314. The Secretary of the Treasury has set the cash transaction reporting threshold at $10,000. 31 C.F.R. §1010.311. (The Bank Secrecy Act regulations, previously codified at 31 C.F.R. pt. 103, were moved, effective March 1, 2011, to 31 C.F.R. pt. 1010. See 75 Fed. Reg. 65806, 65812 (Oct. 26,2010).) Federal regulations define a person’s conduct as “structuring” “if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the [currency transaction] reporting requirements ... ‘In any manner’ includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.” 31 C.F.R. §1010.100(xx).

The Indictment was bloated with multiple counts arising out of the identical conduct. For example, Pingaro and Scola were charged with nine counts arising out of the filing of their tax returns for 2002 through 2005. Count 1 charged conspiracy to commit tax fraud for all four of years 2002-2005, for a total tax due of $190,191, in violation of 18 U.S.C. §371. Counts 2 through 5 then charged tax evasion in violation of 26 U.S.C. §7201, with one count for each of the four taxyears; and Counts 6 through 9 charged making a false tax return in violation of 26 U.S.C. §7206(1), again with one count for each of the same tax years. By far, the largest exposure that the plaintiffs faced based on financial “loss” as that concept is used in the U.S. Sentencing Guidelines, see, e.g., U.S.S.G. §2B1.1, application note 3 (Nov. 1, 2012), was as a result of the structuring activity, which was the basis for the remaining counts in the Indictment. In particular, Pingaro and Scola were charged with conspiracy to illegally structure cash transactions in violation of 18 U.S.C. §371 (Count 10), aseries of individual counts for structuring in violation of 31 U.S.C. §5324(a)(3), totaling $1,492,885 (Counts 11-66), and structuring cash transactions to evade postal money order reporting requirements in violation of 31 U.S.C. §5324(a), totaling $11,800 over four days in 2004 (Count 67). The government also sought forfeiture of more than $3.6 million in U.S. currency and forfeiture of real property (Count 68). For these specific charges, the largest determinant of sentencing exposure was the magnitude of the loss. See, e.g., U.S.S.G. §§2B1.1, 2S1.3, 2T1.1, 2T4.1. It therefore appears that the structuring allegations carried the most significant sentencing consequences for Pingaro and Scola. They have alleged here that, “[flaced with the certainty that they would be convicted of the structuring charges, Pingaro and Scola entered into a plea agreement.”

The mention in Blair, 54 F.3d at 643, of the Bank Secrecy Act as construed in Ratzlaf v. United States, 510 U.S. 135 (1994), is to aversion of the structuring statute before amendment. For a discussion of the evolution of the statute, including the post-Ratzlaf amendment, see United States v. MacPherson, 424 F.3d 183, 188-89 (2d Cir. 2005).

In federal cases such as the one against Pingaro and Scola, in exchange for a plea to a few counts, the U.S. Attorney will usually move to dismiss the remaining charges under Fed.R.Crim.P. 48(a). The court is unable to determine from the record whether the remaining charges were dismissed.

The court has been unable to locate, and the parties do not cite the court to, any state cases resolved on the in pari delicto defense procedurally prior to summary judgment.

At the federal plea proceeding, defense counsel seems to have argued that Pingaro and Scola were not admitting so much of Count 10 as charged structuring while violating another law of the United States as part of a pattern of illegal activity involving more than $100,000 in a 12-month period. Tr. at 34-35.

AGM Marine was ^cided -under Appeals Court Rule 1:28 after February 26, 2008. See Chace v. Curran, 71 Mass.App.Ct. 258, 260 n.4 (2008) (such a decision “may be cited for its persuasive value but . . . not as binding precedent”).

The fact that the plaintiffs “structured” $ 11,800 of funds to avoid the $3,000 postal money order reporting requirement over four days in 2004, see note 6, supra, does not revive the in pari delicto argument on this motion. Clearly here, the major driver of the criminal prosecution was the cash transaction structuring, apparently involving more than 100 times the amount of money than was at issue with the postal money order structuring. Second, it is reasonable to infer that if the plaintiffs were advised by the defendants that to avoid federal reporting they could withdraw under $10,000 of cash, that they may well have reasonably applied the same advice in the postal money order context upon learning of a federal reporting requirement there of $3,000. Thus, the fact that the plaintiffs structured a small number of postal money orders does not make the plaintiffs any more likely to have been aware that their actions were against the law.