# STATE OF MICHIGAN

# COURT OF APPEALS

EUGENE J. THOMAS, WALTER JAMIL a/k/a
WISAM JAMIL a/k/a WALTER THOMAS, SCD
ENTERPRISES, L.L.C., a/k/a TBI
ENTERPRISES, L.L.C., CBW TECHNOLOGIES,
INC., a/k/a TBI TECHNOLOGIES, INC., CBW
ENTERPRISES, INC., a/k/a TBI FRANCHISING,
INC., AMERICAN EAGLE WARRANTY
CORP., a/k/a TBI WARRANTY, INC., and TIME
SQUARE, INC., a/k/a TBI MARKETING, INC.,

        Plaintiffs-Appellees,

v

MILLER CANFIELD PADDOCK & STONE,

        Defendant-Appellant.

UNPUBLISHED
October 21, 2014

No.  314374
Oakland Circuit Court
LC No.  2010-112215-NM

Before:  METER, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted an order denying its motion in limine to assert a wrongful conduct defense in plaintiffs' legal malpractice action.  Because the doctrine of collateral estoppel bars plaintiffs' claims that arise from their own wrongful conduct, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

This is a legal malpractice case.  The underlying case giving rise to the malpractice litigation involved an action brought by Computer Business World, L.L.C., against plaintiffs.

Plaintiffs Eugene J. Thomas and Walter Thomas were the owners of plaintiffs American Eagle Warranty Corporation, Times Square, Inc., CBW Enterprises, Inc., CBW Technologies, Inc., and SCD Enterprises, L.L.C. (collectively referred to as "CBW").  CBW entered into an asset purchase agreement with Computer Business World, through which Computer Business World purchased the assets of CBW.  Dr. Parviz (Perry) Daneshgari owned Computer Business World.  The parties to the purchase agreed to a purchase price consisting of $2 million payable at closing, $700,000 payable by promissory note after closing and the assumption of an outstanding bank debt of nearly $1.4 million.  The purchase agreement allocated various amounts of the

-1-

purchase price to specific categories: working capital, equipment, security deposits and good will, and they agreed to a post closing adjustment of the working capital. The purchase closed in July 2006.

In March 2007, Plante & Moran prepared the post closing adjustment of the working capital and determined that it should be adjusted downward by about $677,500. In around May 2007, Daneshgari discovered that before the parties entered into the purchase agreement, CBW engaged in a practice of fabricating invoices and advertisements, and he immediately stopped the practice. By September 2007, the business failed and a creditor brought a lawsuit against Computer Business World to collect on the outstanding balance of its debt.

Computer Business World commenced an action against plaintiffs, and the matter proceeded to arbitration. In its decision, the arbitrator specifically concluded:

> Prior to the sale of the business of the CBW Entities, the CBW Entities purchased a significant amount of their computer parts from Advanced Micro Devices ("AMD") and Intel Corporation ("Intel"). Both AMD and Intel had a marketing development fund program ("MDF") providing eligibility to purchasers of significant quantities of parts for reimbursement of advertising dollars. In order to qualify for reimbursement of advertising dollars, the purchasers had to meet specific requirements in their advertisements. The evidence reflected that the CBW Entities engaged in a practice of fabricating advertisements and invoices for the purpose of seeking reimbursement under the Intel or AMD MDF programs. Walter and Eugene Thomas authorized and approved this practice. The reimbursements were reported as rebates in the cost of goods sold, rather than advertising expenses, in the financial statements of the CBW Entities.

> * * *

> The evidence reflected that the CBW Entities annually sold in excess of $2,000,000.00 of computer parts to Viva Computers, which allowed the CBW Entities to purchase significant quantities of parts from AMD and Intel at discounted prices. Both Mr. JR Breslin and Mr. Daneshgari testified that AMD and Intel terminated the favorable pricing program with the CBW Entities, based on the fact that before the closing, products sold by the CBW Entities and purchased from AMD and Intel had been traced to products sold in foreign countries in violation of the policies of AMD and Intel. The loss of favorable pricing programs adversely affected the profitability of the company and the ability to participate in advertising rebate programs.

> ***

> . . . The evidence does not support the Thomas' claims that they disclosed the practice of fabricating invoices and advertisements to Dr. Daneshgari before the closing, and I specifically find that Claimants could not have detected this practice through normal due diligence. In this regard, the evidence was conflicting as to whether an e-mail was sent to Dr. Daneshgari and Lindsey

Stetson of Miller Canfield, who represented the CBW Entities, disclosing the practice of fabricating invoices and advertisements before the closing. [1] Nevertheless, even assuming that the e-mail was sent to Dr. Daneshgari before the closing, the fact of the matter is that even Ms. Stetson did not conclude from reading the e-mail that the CBW Entities had fabricated invoices and advertisements. Accordingly, the e-mail itself does not provide sufficient disclosure of the practice before the closing.

* * *

I find that [the CBW Entities] had a legal duty to disclose the practice of fabricating advertisements and invoices for AMD and Intel, as well as the fact that they were purchasing a high volume of parts from Intel and AMD at discounted prices and selling them through improper market channels. I also find that [the CBW Entities] failed to disclose these facts in order to induce reliance by [Computer Business World], that the non-disclosure was misleading, that [Computer Business World] acted in reliance on the misimpression created by [the CBW Entities], and that [Computer Business World was] damaged as a result of [the CBW Entities'] failure to disclose. In this regard, I find that [the CBW Entities] inaccurately reported the reimbursements from the MDF programs as rebates in the cost of goods sold, rather than as advertising expenses, on the companies' financial statements.

The arbitrator awarded $2.8 million in damages to Computer Business World.

---

[1] At issue was not an email, but a fax. The fax was from chief financial officer Sam Shabander to Daneshgari, and was forwarded to Lindsey Stetson:

Perry [Daneshgari],

Please find enclosed the Articles of Incorporation for the separate entity, Times Square, Inc. The sole purpose of this stand-alone/shell company is to create and provide advertising, marketing and consulting invoices to Computer Builders Warehouse, who in turn submits these invoices to vendors for Market Development Fund (MDF) reimbursements.

As you are aware from your discussion with Gene and Walter [plaintiffs] yesterday, due to the narrow nature of the Market Development Funds (MDF) system that was created and set-up by our vendors, these submitted invoices may not necessarily reflect what is actually advertised. However, this practiced structure allows CBW to draw 100% of its earned co-op funds from its vendors in which these funds are then reinvested back into Computer Builders Warehouse for market development and operations.

Please feel free to contact me if you have any questions.

Oakland County Circuit Court Judge Wendy Potts granted Computer Business World's motion to confirm the arbitration award on November 12, 2008. This Court affirmed the order confirming arbitration. *Computer Business World, LLC, v Thomas,* unpublished opinion per curiam of the Court of Appeals, issued September 2, 2010 (Docket Nos. 289396, 290366), lv den 488 Mich 1047 (2011).

Plaintiffs Eugene and Walter Thomas filed chapter 11 bankruptcy petitions. Computer Business World filed an adversary proceeding against them, arguing that plaintiffs' debts were nondischargeable due to fraud. The bankruptcy court, relying on the arbitrator's finding that plaintiffs' acted fraudulently, applied the principle of collateral estoppel and concluded that the debt was nondischargeable. *In re Jamil*, 409 BR 866, 871 (Bankruptcy Court, ED Mich 2009).

Plaintiffs brought this action against defendant and others[2], alleging legal malpractice. They alleged that during the course of the representation, they told defendant about the AMD practices, as well as other matters, and that defendant failed to disclose this information to Computer Business World. Plaintiffs asserted that in the absence of defendant's "substandard representation, legal malpractice and breach of the standard of practice," the $2.8 million arbitration award would not have been entered against them. They alleged 39 separate breaches of the standard of practice.

On January 20, 2012, defendant filed a motion for summary disposition, seeking dismissal of all claims arising from or related to the MDF practices. It relied on collateral estoppel and the doctrine of *in pari delicto*. Also, on January 13, 2012, defendant moved in limine to preclude plaintiffs from introducing evidence to refute any factual issues resolved by the arbitrator. Defendant parsed the arbitrator's decision into 11 facts, which it asserted were established by virtue of the arbitrator's findings. It argued that pursuant to the doctrine of collateral estoppel, plaintiffs should not be permitted to relitigate those facts.

On March 27, 2012, the trial court issued an opinion and order, denying defendant's motion for summary disposition, but granting defendant's motion in limine to preclude evidence refuting factual issues decided in arbitration. The trial court determined that the following facts had been established:

(1)  That Plaintiffs engaged in a practice of fabricating advertisements and invoices for the purpose of seeking reimbursement under the Intel or AMD MDF programs;

(2)  That Walter and Eugene Thomas authorized and approved this practice;

(3)  That Daneshgari could not have detected the practice of fabricating invoices and advertisements through normal due diligence;

---

[2] The individual defendants were attorneys, some of whom worked for defendant. Plaintiffs alleged legal malpractice against them as well as defendant. The trial court dismissed plaintiffs' claims against all other defendants.

(4)  That Plaintiffs failed to disclose the practice to Daneshgari;

(5)  That Plaintiffs failed to disclose the practice of purchasing a high volume of parts from Intel and AMD at discounted prices and selling them through improper market channels;

(6)  That the nondisclosure was misleading;

(7)  That the nondisclosure of selling through improper market channels was misleading;

(8)  That Plaintiffs knew the non-disclosures were misleading;

(9)  That Daneshgari acted in reliance upon the non-disclosures; and

(10)  That Plaintiff's inaccurately reported the reimbursements from the MDF programs as rebates in the cost of goods sold, rather than as advertising expenses on the companies' financial statements.

However, the trial court went on to state the issue of defendant's malpractice was not litigated and defendant was not entitled to summary disposition:

> Even with this ruling as to collateral estoppel, Defendants['] request for summary disposition to dismiss the allegations that Miller Canfield Defendants failed to disclose the MDF practices . . ., failed to advise Plaintiffs to not sell their businesses if the MDF created liability . . ., and failed to inquire into, use the information found in, or follow up on the information disclosed in Plaintiffs' fax of June 2, 2006 . . .is unsupported because **these allegations** were **not** litigated in a prior litigation and are the crux of the alleged legal malpractice by Defendants.

In a May 25, 2012 opinion and order, the court also granted defendants' motion to deem additional facts—the valuation of Computer Business World—admitted on the basis that they were litigated in the arbitration.

Trial commenced, but after several days of proceedings, the court granted defendant's motion for mistrial due, in significant part, to the confusion regarding application of collateral estoppel. The parties were essentially granted a "do over" in which they could re-argue previous motions.

Defendant again moved to deem certain facts established on the basis of collateral estoppel, arguing that plaintiffs were precluded from introducing evidence that contradicted the established facts. It argued that the arbitrator's finding that plaintiffs intentionally defrauded Daneshgari when they sold the business to him precluded plaintiffs from relitigating the issue. Defendant further argued that application of collateral estoppel in this case resulted in a dismissal of plaintiffs' claims based on the wrongful conduct rule and the principle of *in pari delicto*.

Plaintiffs opposed the motion. They argued that collateral estoppel had no application in a legal malpractice action so as to preclude litigation of issues that were decided in a prior

arbitration proceeding between the former client and a third party. Plaintiffs maintained that defendant could not satisfy all of the requirements for application of collateral estoppel: (1) actual litigation of essential facts; (2) full and fair opportunity to litigate the issues in the previous lawsuit; and (3) mutuality. Plaintiffs claimed that the issues in the case at bar were different from those in the previous matter and therefore collateral estoppel did not apply.

The court held a hearing on defendant's motion on November 7, 2012. The trial court held that collateral estoppel did not apply:

> Here, the Court finds that the issues of fact relied upon in the arbitration dealt with the conduct of the buyer and seller in the underlying asset purchase agreement and did not deal with the plaintiffs' attorneys [sic] alleged failure to disclose the MDF practices and/or failure by the lawyers, Miller Canfield defendants, to advise plaintiffs not to sell their business, the precise legal malpractice claims, or issues in this case. As argued by plaintiff, the three issues at stake in this litigation were neither addressed in the underlying arbitration nor involved the same parties. Any prior ruling [sic] made by this Court were palpably wrong and based upon an erroneous reading of the doctrine here involved.

The court entered an order denying defendant's motion to have certain facts deemed admitted on November 29, 2012. This Court denied defendant's application for leave to appeal on the collateral estoppel issue. *Eugene J Thomas v Miller Canfield Paddock & Stone PLC,* unpublished order of the Court of Appeals, entered January 11, 2013 (Docket No. 313650).

While defendant's application was pending in this Court, defendant filed a motion in limine in the trial court, requesting that it be allowed to assert the wrongful conduct rule as a defense and that the trial court instruct the jury on the rule. Defendant argued that there were "two distinct frauds." The first fraud was plaintiffs' act of defrauding their vendors – AMD – by submitting fake advertisements and fake invoices. "The narrow factual dispute for the jury to decide is whether the vendors authorized the scheme." The second fraud was plaintiffs' act of defrauding their buyer – Daneshgari – by failing to disclose the fake invoices, failing to disclose "gray market" sales, and misrepresenting plaintiffs' financial records. Because the trial court previously ruled that collateral estoppel no longer applied, defendant was ready to present the same evidence as was presented at the arbitration hearing. Defendant argued that the wrongful conduct rule may be applied under the circumstances of this case and that the jury should have the opportunity to decide the issue.

In response, plaintiffs argued that the applicability of the wrongful conduct rule was not an issue to be presented to the jury; it was an issue of law to be determined by the judge. Plaintiffs further argued that the wrongful conduct rule did not apply because the alleged prohibited conduct was not a violation of criminal law. In addition, plaintiffs challenged application of the wrongful conduct rule on the ground that a sufficient causal nexus between their alleged conduct and their asserted damages did not exist.

The court addressed defendant's motion at a hearing on January 9, 2013. It explained, in part:

Plaintiffs' legal malpractice claim against defendants [sic] is that defendants [sic] failed to disclose the MDF practices to the buyer under the buy/sell agreement. Defendants [sic] argue . . . that plaintiffs' conduct was a proximate cause of their own illegal conduct under MCL 750.218 which makes it a crime for a person to defraud, cheat, or use false pretenses to obtain from a person money or the like. Again, [*Orzel v Scott Drug Co*, 449 Mich 550; 537 NW2d 208 (1995),] states that a sufficient causal nexus must exist between plaintiffs' alleged conduct and plaintiffs' asserted damages.

Here, plaintiffs' allegation of damages against Miller Canfield is based on their failure to disclose the MDF practices that plaintiff admitted it incurred. Important—their being Miller Canfield. Importantly, this Court notes that plaintiffs' position in this case is that their vendor, AMD, allowed plaintiffs to present fake ads and false invoices contrary to defendants' allegations that plaintiffs intended to defraud both AMD and [Daneshgari].

This case is about whether Miller Canfield failed to disclose the practices and plaintiffs' damages, if any, as a result. Based on the facts alleged, the Court finds that there is not—not a sufficient causal nexus between plaintiffs' MDF practices and the claimed damages in this legal malpractice case to warrant the defense. The Court also agrees and opines that whereas here [sic], a similar approach can be taken through comparative fault. The confusion to the jury would be almost insurmountable particularly where the Court would be—could be asked to draw parallels to a criminal statute in a civil proceeding. That confusion could be for example, the burden of proof, actual elements and the like.

On January 11, 2013, the court entered an order denying defendant's motion in limine requesting the court to permit it to assert the wrongful conduct defense and to instruct the jury accordingly. This Court granted defendant's application for leave to appeal. *Eugene J Thomas v Miller Canfield Paddock & Stone PLC,* unpublished order of the Court of Appeals, entered January 30, 2013 (Docket No. 314374).

## II. ANALYSIS

At oral argument, we asked the parties to revisit the issue of collateral estoppel. After reviewing counsels' well-written supplemental briefs, we now conclude that collateral estoppel applies to the facts of this case and that the wrongful conduct rule precludes plaintiffs from pursuing their malpractice action to the extent their claims touch upon their own misconduct.

The application of collateral estoppel is a legal question, which this Court reviews de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Under the wrongful conduct rule, a plaintiff's claim is barred when his claim is based entirely or partially on his own illegal conduct. *Orzel*, 449 Mich at 558. The rule also encompasses the "doctrine of *in pari delicto*," which applies to bar a claim between parties where the parties are equally in the wrong. *Id*.

The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct. If courts chose to regularly give their aid under such circumstances, several unacceptable consequences would result. First, by making relief potentially available for wrongdoers, courts in effect would condone and encourage illegal conduct. Second, some wrongdoers would be able to receive a profit or compensation as a result of their illegal acts. Third, and related to the two previously mentioned results, the public would view the legal system as a mockery of justice. Fourth, and finally, wrongdoers would be able to shift much of the responsibility for their illegal acts to other parties. As stated by the Court of Appeals, where the plaintiff has engaged in illegal conduct, it should be the "plaintiff's own criminal responsibility which is determinative." [*Id.* at 559-560 (internal citations and footnotes omitted).]

"To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Id*. at 561. In addition, "[f]or the wrongful-conduct rule to apply, a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id*. at 564. The *Orzel* Court explained:

"[The plaintiff's] injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted." [*Id*. at 565, quoting *Manning v Bishop of Marquette*, 345 Mich 130, 136; 76 NW2d 75 (1956), quoting *Meador v Hotel Grover*, 9 So 2d 782 (Miss, 1942).]

A plaintiff's conduct must only be "a" proximate cause of the damages; it need not be "the" proximate cause. *Orzel*, 449 Mich at 566-567.

For the wrongful conduct rule to apply in this case, plaintiffs' conduct—their alleged fraud with regard to the asset purchase agreement—must be illegal.[3] It must be prohibited by a penal or criminal statute. Defendant asserts that plaintiffs' conduct with regard to the sale of the businesses to Daneshgari and Computer Business World constituted false pretenses pursuant to MCL 750.218. The crime of false pretenses exists where a person, "with the intent to defraud or cheat makes or uses a false pretense to . . . [o]btain from a person any money . . . ." MCL 750.218(1)(c). The elements of the offense include: (1) a false representation as to an existing

---

[3] The parties improperly focus on plaintiffs' conduct as it relates to AMD when the proper focus is on plaintiffs' conduct as it relates to the asset purchase agreement. Plaintiffs submitted inaccurate financial statements, which included the false invoices, during the purchase agreement. Plaintiffs induced Daneshgari and Computer Business World to rely on inaccurate financial information.

fact; (2) knowledge that the representation is false; (3) use of the false representation with the intention to deceive; and (4) detrimental reliance on the false representation. *People v Webbs*, 263 Mich App 531, 532, n 1; 689 NW2d 163 (2004).

We conclude that plaintiffs are collaterally estopped from arguing that their conduct was non-fraudulent. Moreover, their fraudulent conduct satisfies the elements of false pretenses. Plaintiffs submitted false financial statements with knowledge of their falsity and with the intent to deceive Daneshgari and Computer Business World during the asset purchase agreement.

"Collateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001). The purpose of the principle is "to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Detroit v Qualls*, 434 Mich 340, 357 n 30; 454 NW2d 374 (1990), quoting *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). The principle of collateral estoppel "applies to factual determinations made during . . . arbitration proceedings." *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995).

Three elements must be established for application of collateral estoppel: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004), quoting *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988). "[W]here collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat*, 469 Mich at 680-681.

The first requirement for application of collateral estoppel is that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment. "'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action on a different cause of action.'" *Senior Accountants, Analysis & Appraisers Ass'n v Detroit*, 399 Mich 449, 458; 249 NW2d 121 (1976), quoting Restatement Judgments, § 68, p 293. Collateral estoppel applies only where the ultimate issue in the second proceeding is identical to that determined in the prior action, *Qualls*, 434 Mich at 357; *Amalgamated Transit Union, Local 1564 v Southeastern Michigan Transportation Authority*, 437 Mich 441, 451; 473 NW2d 249 (1991). "The issue[] must be identical, not merely similar." *Board of County Rd Comm'rs v Schultz*, 205 Mich App 371, 376; 521 NW2d 847 (1994). That issue must also be essential to the final judgment:

> "The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior

action must have been necessary and essential to the resulting judgment." [*Qualls*, 434 Mich at 357, quoting 1B Moore, Federal Practice, ¶ 0.443[1], p 759.]

The "issue" that is the focus of this matter is plaintiffs' fraud, as found by the arbitrator. The arbitrator made specific findings that plaintiffs engaged in misrepresentation and fraud and those findings must be considered established in this case. The arbitrator specifically concluded:

> I find that [the CBW Entities] had a legal duty to disclose the practice of fabricating advertisements and invoices for AMD and Intel, as well as the fact that they were purchasing a high volume of parts from Intel and AMD at discounted prices and selling them through improper market channels. I also find that [the CBW Entities] failed to disclose these facts in order to induce reliance by [Computer Business World], that the non-disclosure was misleading, that [Computer Business World] acted in reliance on the misimpression created by [the CBW Entities], and that [Computer Business World was] damaged as a result of [the CBW Entities'] failure to disclose. In this regard, I find that [the CBW Entities] inaccurately reported the reimbursements from the MDF programs as rebates in the cost of goods sold, rather than as advertising expenses, on the companies' financial statements.

The arbitrator also determined the amount of damages and awarded Daneshgari and Computer Business World $2.8 million. These findings were essential to the arbitrator's judgment against plaintiffs in that action.

Oakland County Circuit Court Judge Wendy Potts granted Computer Business World's motion to confirm the arbitration award on November 12, 2008, rejecting CBW's claims that the arbitrator exceeded his authority in awarding more damages than the purchase agreement permitted and that its due process rights were violated because relevant evidence from an AMD representative would have revealed that there was no fraud:

> Defendants have raised a multitude of issues. However, the Court finds every one of those issues was waived by the defendants because they never objected to these issues during the lengthy arbitration proceeding. Even with regard to defendants' claim that the arbitrator exceeded a contractual monetary cap on damage, . . . the award reflects damages for a claim raised outside the contractual cap, and the defendants never objected to the plaintiff's request to amend its complaint to add a tort claim. Nor, did defendants object to the arbitrator considering this issue during the proceeding.
>
> Based on defendants' failure to make any objections during the proceeding, looking at the face of the award, the Court cannot find any mistakes of fact or law that the arbitrator exceeded his authority or any conduct by the arbitrator which would justify vacating the award as provided in MCR 3.602(K).
>
> Thus, after considering the arguments of the parties, the Court finds the award of the arbitrator should be confirmed and a judgment should be entered consistent with this award.

CBW moved for reconsideration, again arguing that the failure of certain witnesses to testify was the most significant factor that allowed the arbitrator to conclude that the defendants' advertising rebates were a fraud on AMD and that the damages award was inappropriate. The trial court denied CBW's motion for reconsideration:

> Defendants' arguments concerning the witness testimony of whether Defendants defrauded AMD in their purchase of the chips goes to the merits of the case and ask this Court to substitute its judgment for that of the arbitrator, which this Court is not permitted to do. *Gordon Sel-Way, Inc. supra,* 438 Mich 497. In the award, the arbitrator made specific factual findings concerning the AMD reimbursement for advertising dollars transactions based on the evidence presented at the hearing. Moreover, no evidence has been presented in Defendants' motion for reconsideration, through a transcript of the arbitration hearing, that the arbitrator refused to allow Defendant to present evidence via specific witness testimony at the arbitration hearing.

This Court affirmed the order confirming arbitration. *Computer Business World, LLC, v Thomas,* unpublished opinion per curiam of the Court of Appeals, issued September 2, 2010 (Docket Nos. 289396, 290366). This Court rejected the claim that the arbitrator exceeded his authority in awarding damages for CBW's fraud in the inducement claim. "Because the arbitration defendants' fraud in the inducement assertion presents an impermissible invitation to scrutinize the merits of the arbitration award, we decline to consider any purported error by the arbitrator in this regard." *Id.* at slip op, p 6. Importantly, this Court also rejected the claim that the arbitrator should have postponed the hearing in order to allow CBW to subpoena AMD account representative "Mr. Stein" who would have testified that the practice of fabricating invoices was authorized by AMD. CBW had argued that Stein's testimony would have established that they acted in good faith. This Court concluded otherwise:

> The arbitrator concluded that the arbitration defendants [CBW] had a legal duty to disclose their practice of fabricating advertisements and invoices relating to AMD and Intel, a practice that [Computer Business World] could not otherwise have detected. The arbitrator also found that the arbitration defendants did not disclose this practice "in order to induce reliance by [Computer Business World], [and] that the non-disclosure was misleading." In light of the arbitrator's findings and logic, it appears highly unlikely that he would have deemed integral or even relevant to his analysis whether an AMD representative had authorized the invoice fabrication practice. At a minimum, especially given the arbitration defendants' neglect to substantiate in any respect any purported information to which Stein could have testified, the record before us offers only speculation to bolster the arbitration defendants' averments that "the arbitrator refused to postpone the hearing on a showing of sufficient cause, [or] refused to hear evidence material to the controversy." And as a general rule, courts will not vacate an arbitrator's award on the basis of speculative concerns. [*Id.* at slip op, pp 8-9.]

The matter was visited again in plaintiffs' Chapter 11 bankruptcy petitions. *In re Jamil*, 409 BR 866, 871 (Bankruptcy Court, ED Mich 2009). The bankruptcy court looked to the

arbitrator's decision and found all the elements necessary to establish non-dischargeability for reasons of fraud. It concluded that the debts to Computer Business World (the arbitration award) were nondischargeable.

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss . . .

> In the arbitration proceeding, [Computer Business World] alleged fraud in the inducement and breach of contract against the defendants. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." . . . Following 13 days of hearings, the arbitrator issued his opinion in which he . . . determined all of the necessary elements under § 523(a)(2)(A). Accordingly, the Court concludes that the debt of each debtor to the plaintiff is nondischargeable under § 523(a)(2)(A). [*Id.* at 872.]

In the instant action, plaintiffs claim that defendant committed legal malpractice through defendant's representation of plaintiffs during the asset purchase agreement, which resulted in the unfavorable arbitration award. "To state a claim for legal malpractice, a plaintiff must allege (1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Kloian v Schwartz*, 272 Mich App 232, 240; 725 NW2d 671 (2006). To establish proximate cause, plaintiffs must show that defendant's alleged failures were a cause in fact of plaintiff's injury. *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). This will require a showing that in the absence of defendant's alleged malpractice plaintiffs would have successfully defended the claims raised in arbitration. *Id*.

In support of their claim, plaintiffs allege in part that they revealed the MDF practices to defendant and that defendant did not disclose those practices or other irregularities to Computer Business World/Daneshgari. To prevail on their legal malpractice claim, plaintiffs must demonstrate that defendant had knowledge of the MDF practices and other irregularities and that if it had disclosed those facts to Computer Business World/Daneshgari, Computer Business World/Daneshgari would not have prevailed in the underlying arbitration.

The arbitrator's findings of fact must be considered established in this action because the issue of plaintiffs' fraud during the asset purchase agreement was actually litigated and determined by a valid and final judgment and was essential to that judgment. The basis of the claims asserted by Computer Business World and Daneshgari was plaintiffs' misrepresentation/fraud. The findings in that regard were actually litigated at arbitration and determined by the arbitrator. Those facts are relevant to determining whether defendant's alleged malpractice was the proximate cause of plaintiffs' injury, which is the $2.8 million arbitration award against it. To the extent that plaintiffs' fraudulent conduct is an issue that must be resolved in the case at bar, relitigation of that issue is barred.

In support of their position that collateral estoppel does not apply, plaintiffs rely on *Computer Business World, LLC v Simen*, unpublished opinion per curiam of the Court of Appeals, issued March 13, 2012 (Docket No. 301082). *Computer Business World* involved Computer Business World and Daneshgari's legal malpractice claim against the attorneys who represented them during the asset purchase agreement transaction. This Court explained:

> The arbitrator issued an opinion and award on August 4, 2008. The arbitrator found that prior to the purchase, the sellers had engaged in a scheme to fabricate advertisements and invoices in order to obtain advertisement reimbursement, which they then reported as rebates in the costs of goods sold. The arbitrator further concluded that plaintiffs became aware of the fabrication of invoices and advertisements nine months after the purchase, and that plaintiffs "could not have detected this practice through normal due diligence." The arbitrator also found that the sellers had a legal duty to "disclose the practice of fabricating advertisements and invoices" and the sellers' purchase of "a high volume of parts from Intel and AMD at discounted prices and selling them through improper market channels." Moreover, the arbitrator found that two representatives of the sellers breached the contract when they walked out of a meeting concerning the company's working capital, threatened to bankrupt the company, and refused to work for the company for the agreed upon year after the sale.
>
> Nevertheless, the arbitrator concluded that plaintiffs were "not entitled to rescission of the [asset purchase agreement] because they did not make a seasonable assertion of their rescission right." However, because of the fraudulent concealment and breach of contract by the sellers, the arbitrator awarded plaintiffs damages of $2,800,000, plus interest. The circuit court confirmed the arbitration decision. It was plaintiffs' [Computer Business World and Daneshgari] belief that they "would have had a higher arbitration award [but Simen] missed the deadline for breach of contract suit." [*Id.* at slip op at 2-3.]

The plaintiffs (Computer Business World/Daneshgari) alleged that the attorneys failed to (1) properly perform due diligence; (2) detect, warn or explain the implications of the CBW's failure to properly trademark their name and logo; (3) advise them that due diligence should be conducted regarding trademark issues; (4) negotiate their debt; (5) seek an extension of a lease; and (6) seek rescission and engaged in other acts of malpractice. *Id.*, slip op at 4.

The defendants in *Computer Business World* (attorney Sander Simen and his law firm) moved for summary disposition on collateral estoppel grounds. In rejecting the application of collateral estoppel in that case, this Court explained:

> [T]he issues addressed in the arbitration are plaintiffs' [Computer Business World and Daneshgari] claims relating to the misrepresentations and fraudulent conduct of the sellers, not the conduct of Simen and his firm or their legal representation of plaintiffs in those transactions. Nowhere in the arbitrator's opinion is there any reference to intellectual property, intellectual property due diligence, or whether defendants bore any legal responsibility for the failure to perform intellectual

-13-

property due diligence. The only mention of the term "due diligence" is a statement that plaintiffs [Computer Business World and Daneshgari] could not have discovered the fabrication of invoices and advertisements through due diligence, and plaintiffs [Computer Business World and Daneshgari] are not asserting any claim relating to the fabrication of invoices and advertisements in this lawsuit. Thus, the issue of defendants' [the attorneys] responsibility for intellectual property due diligence was not actually litigated and was not subject to any final judgment.

With regard to plaintiffs' [Computer Business World and Daneshgari] claim of legal malpractice relating to the Madison Heights lease, there is likewise no mention in the arbitration opinion of the lease or of the events surrounding plaintiffs' eviction. Thus, collateral estoppel does not bar this claim, because the issue has not been actually litigated and has not been subject to a final judgment. As for rescission, the arbitrator did state that rescission of the contract was not seasonably sought. However, the arbitrator made no findings of fact relating to why rescission was not sought, at what point rescission should have been sought, or the role defendants [the attorneys] played in failing to seek rescission. Moreover, as plaintiffs [Computer Business World and Daneshgari] acknowledge, even if collateral estoppel did apply, this would not justify granting defendants' [the attorneys] motion for summary disposition because a finding that rescission was not seasonably sought actually bolsters plaintiffs' [Computer Business World and Daneshgari] claim that defendants [the attorneys] committed legal malpractice. [*Id.*, slip op at 6.]

*Computer Business World* is easily distinguishable from the case at bar. Although the arbitrator did not address the issues that form the basis of plaintiffs' claim of legal malpractice in this action (i.e., defendant's representation leading up to the asset purchase agreement), the arbitrator *did* address the key issue of plaintiffs' fraud. Plaintiffs' fraud and misrepresentation are issues that must be determined in order to resolve plaintiffs' legal malpractice action because, under the wrongful conduct rule, plaintiffs are precluded from asserting a claim against defendant for their own misconduct. The trial court erred in denying defendant's request that it deem the facts as determined by the arbitrator as established for purposes of this action.[4]

---

[4] We reject plaintiffs' attempt to reference an affidavit authored by their former attorney, Sander Simen. Plaintiffs sued Daneshgari, Computer Business World and others in federal district court, alleging, inter alia, claims under the Racketeer Influenced and Corrupt Organizations Act and the Fair Debt Collection Practices Act. *Thomas v Daneshgari,* 997 F Supp 2d 754 (ED Mich 2014). They argued that Daneshgari perjured himself during the arbitration proceeding and, therefore, fraudulently procured a judgment against them. In the affidavit, Simen avers that he was present when plaintiffs advised Daneshgari of the invoice practice. The district court dismissed plaintiffs' federal claims as without merit and declined to exercise supplemental jurisdiction over plaintiffs' remaining state claims. The district court noted:

Plaintiffs argue that, even if certain facts are deemed established, the wrongful conduct rule does not apply because there is no causal nexus between a plaintiffs' wrongful conduct and their claim for damages.

As noted by defendant, there is support for applying the wrongful conduct rule in the context of a legal malpractice action. In *Pantely v Garris & Garris, PC*, 180 Mich App 768; 447 NW2d 864 (1989), which predated *Orzel*, this Court applied the doctrine of *in pari delicto* to bar the plaintiff's legal malpractice claim against the attorneys and law firm that represented her in her divorce proceedings. The plaintiff, on advice from her attorneys, perjured herself, claiming that she had lived in Livingston County for at least 10 days before filing her complaint. She obtained a divorce judgment, which was later set aside for lack of jurisdiction. The plaintiff then filed a legal malpractice action against her attorneys, alleging that they were negligent by filing the action in Livingston County, alleging that she was a resident of Livingston County, and advising her to testify falsely that she lived in Livingston County. *Id*. at 770-771.

The defendants moved for summary disposition, asserting that the plaintiff was *in pari delicto* with them and may not profit from her unsuccessful fraud. *Id*. at 772. The plaintiff argued against application of the doctrine of in pari delicto, asserting that she lied at her attorneys' direction and was emotionally distraught and desperate to obtain the divorce. She asserted that "she acted 'under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition'" and that her misconduct was not as reprehensible as that of the defendants. *Id*. at 775-776. The Court found the doctrine applicable. It held that because "all of the losses claimed resulted from the Supreme Court's decision to set aside the Livingston County judgment and since that decision was premised solely upon [the plaintiff's] perjury, that perjury bars all claims against [the] defendants . . . ." *Id*. at 778. This Court wrote:

> We can readily envision legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault. But perjury is not complex; and telling the truth poses no dilemma. Even against the backdrop of a moral relativism that passes for intellectual sophistication in contemporary America, perjury is wrong. More pointedly, it is a crime. MCL 750.422; MSA 28.664. A law degree does not add to one's awareness that perjury is immoral

> Plaintiffs could theoretically return to state court and move to amend the state court judgment, or request relief from the judgment. The Michigan Court Rules authorize the state court to grant a new trial based upon "irregularity in the proceedings" or "misconduct ... of the prevailing party." MCR 2.611(A)(1)(a), (b). The Michigan Court Rules authorize "relief from judgment" based on "[n]ewly discovered evidence" or "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." MCR 2.612(C)(1)(a), (c). Plaintiff's counsel conceded at the hearing that this kind of relief was available. [*Thomas*, 997 F Supp 2d at 761, n 4.]

Similarly, we conclude that the arbitration award (and prior judgments arising therefrom) continue to be valid absent an order setting it aside.

and illegal, any more than an accounting degree adds to one's awareness that tax fraud is immoral and illegal. We agree with the views expressed by the Wisconsin Supreme Court in *Evans* [*v Cameron*, 360 NW2d 25, 28-29 (Wis, 1985)]:

> "There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie."

[*Pantely*, *supra* 180 Mich App at 776.]

The Court agreed that the attorneys' misconduct harmed the profession, the courts and the public. However, it noted that there exist means to account for those harms: discipline or disbarment; contempt proceedings; and criminal prosecution. *Id*. It commented, "To argue that an equal partner in the alleged perjury can clothe herself in the vicarious virtue of the public interest and recover damages caused by her own perjury is to willingly suspend disbelief." *Id*. at 777-778.

Plaintiffs brought this malpractice claim against defendant, alleging that defendant failed to disclose their MDF practices to Daneshgari and that as a result of that failure, they were held liable to Daneshgari and Computer Business World for a $2.8 million judgment. Plaintiffs can only establish their malpractice claim against defendant by relying on their own misconduct. The arbitration award against plaintiffs was based on their fraud, and this legal malpractice claim is premised on the fact that they were held liable for fraud. Therefore, a sufficient causal nexus exists between plaintiffs' fraudulent activity and the damages they claim in this action.

In conclusion, the doctrine of collateral estoppel bars plaintiff's claims against defendant to the extent those claims arise from their own wrongful conduct. Plaintiffs brought this legal malpractice action against defendant, arguing that defendant was negligent either because it knew about the false invoices and failed to include the information in the closing documents or because it did not know about the false invoices and failed to exercise due diligence in uncovering the practice and advising plaintiffs accordingly. Applying the doctrine of collateral estoppel, plaintiffs' conduct has been found fraudulent and the wrongful conduct rule precludes their recovery. Because plaintiffs have admitted to fabricating false invoices and their conduct in the asset purchase sale was found fraudulent by the arbitrator, there are no issues of fact

remaining.  As a matter of law, plaintiffs cannot proceed on any of their malpractice claims that touch upon their own misconduct.[5]

We vacate the trial court's order denying defendant's motion in limine to assert a wrongful conduct defense and remand for further proceedings to determine what, if any, of plaintiff's claims remain.  We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[5] Having found that collateral estoppel and the wrongful conduct rule apply, we need not address defendant's claim that the wrongful conduct rule is a matter of fact for the jury to decide.  Nor need we determine whether comparative fault would adequately protect defendant in a manner similar to the wrongful conduct rule.  Nor need we consider whether the wrongful conduct rule was unnecessarily confusing for a jury.