PANTELY v GARRIS, GARRIS & GARRIS, PC

Docket No. 100477. Submitted October 6, 1988, at Lansing. Decided November 6, 1989. Leave to appeal applied for.

Eugenia Pantely gave perjured testimony relative to her residency in Livingston County in order to secure a divorce from Thomas Stamadianos in 1981. A year later, Stamadianos moved to set aside the divorce on the basis of the fraud perpetrated on the court by the perjured testimony as to residency. Pantely admitted that she had not satisfied the residency requirement. The trial court concluded that it lacked jurisdiction to grant the divorce, but set aside only the property settlement provisions of the divorce decree because Pantely had already remarried. The Court of Appeals reinstated the divorce judgment in full, holding that the residency requirement was not jurisdictional. *Stamadianos v Stamadianos,* 133 Mich App 430 (1984). The Supreme Court reversed and set aside the entire divorce judgment, holding that the residency requirement was jurisdictional. *Stamadianos v Stamadianos,* 425 Mich 1 (1986).

In the meantime, Pantely commenced in Washtenaw Circuit Court a malpractice action against the law firm Garris, Garris & Garris, P.C., and two members of that law firm, Jack J. Garris and Steven E. Garris, who had represented her at the time of the filing of the divorce action, and Erwin A. Salisbury, who had represented her after defendants Garris had withdrawn as counsel. Pantely alleged that defendants Garris had committed legal malpractice by commencing the divorce action in Livingston County by counseling her to testify falsely about her residency and by causing her to later employ incompetent counsel, Salisbury. She alleged that Salisbury committed malpractice by insisting that the trial court set aside the entire judgment and by advising her second husband to move out of the marital home. She alleged that the malpractice resulted in emotional distress, damage to her reputation, unnecessary legal expenses and loss of the society and companionship of her

REFERENCES

Am Jur 2d, Attorneys at Law §§ 119, 120, 197, 205, 217 *et seq.*

See the Index to Annotations under Attorney or Assistance of Attorney; Malpractice by Attorney; Perjury.

second husband. Defendants Garris moved for summary disposition on the basis that, by committing the perjury, plaintiff was in pari delicto with them and could not maintain the malpractice action to recover for her own unsuccessful fraud. Defendants Garris also moved for summary disposition on the basis of the statute of limitations. Salisbury moved for summary judgment on the basis that he was not representing plaintiff at the time of the perjury and that he could not be held liable for damages that flowed from that event. The trial court, Edward D. Deake, J., granted the motion of defendants Garris on the basis that plaintiff was in pari delicto, but denied the motion on the running of the limitation period. The trial court also granted Salisbury's motion. Plaintiff appealed. Defendants Garris, by delayed leave granted, cross appealed from the denial of summary disposition on the basis of the running of the limitation period.

The Court of Appeals *held:*

1. Plaintiff is precluded from bringing a legal malpractice action which arises out of her own act of perjury. One who is equally at fault in setting in motion by an immoral or illegal act a series of events which lead to an untoward conclusion may not seek the assistance of the courts to redistribute the losses among the malefactors. The immoral nature of the act of perjury is apparent to all, thus plaintiff may not claim that her act of perjury is not of equal culpability as the alleged inducement of such perjury by defendants Garris. Neither does the fact that she may have been under stress due to the legal proceedings absolve plaintiff of the legal consequences of her act of perjury.

2. Plaintiff claimed damages were proximately caused by her perjury. Since defendant Salisbury was not representing plaintiff at the time the perjury was committed, the trial court properly granted summary judgment in his favor.

3. Since plaintiff alleged that defendants Garris continued to render legal services for her until less than a month before the malpractice action was commenced, the trial court properly denied the motion for summary disposition based on the statute of limitations.

Affirmed.

1. ATTORNEY AND CLIENT — LEGAL MALPRACTICE — PERJURY — IN PARI DELICTO.

An action for legal malpractice for damages allegedly suffered from giving perjured testimony may not be brought by a client against an attorney who allegedly advised the client to commit

the perjury, since the attorney and client are in pari delicto and the courts will not give aid to one whose cause is founded on an immoral or illegal act; the wrongful nature of perjury is apparent to all and thus neither the advice of counsel nor the stress of the legal proceedings will relieve a client from being deemed to be equally at fault in the actual commission of perjury.

2. ATTORNEY AND CLIENT — LEGAL MALPRACTICE — BURDEN OF PROOF.

A plaintiff in an action for legal malpractice has the burden of proving (1) the existence of the attorney-client relationship, (2) the acts which are alleged to have constituted the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the fact and extent of the injury alleged.

*Blaske & Blaske* (by *E. Robert Blaske*), for plaintiff.

*Plunkett & Cooney, P.C.* (by *Patrick M. Barrett* and *Christine D. Oldani*), for defendants Garris.

*Miller, Canfield, Paddock & Stone* (by *Edmond F. Devine*), for defendant Salisbury.

Before: MCDONALD, P.J., and WAHLS and R. L. TAHVONEN,* JJ.

R.L. TAHVONEN, J. Can a client who perjures herself recover damages caused by the failed deceit from the lawyer who counselled the lie? No, said the trial court. We agree and affirm.

Eugenia Pantely and Thomas Stamadianos were granted a consent default judgment of divorce by the Livingston Circuit Court in 1981. Ms. Pantely alleged in her divorce complaint and testified in court that she had lived in Livingston County for at least ten days before filing her complaint. About a year later, Mr. Stamadianos moved to modify the judgment or, in the alternative, to have it set aside

* Circuit judge, sitting on the Court of Appeals by assignment.

because of fraud upon the court by Ms. Pantely, including a misrepresentation that she had lived in Livingston County for ten days immediately before filing the divorce action. Ms. Pantely eventually filed an affidavit admitting that she had not lived in Livingston County for the required ten days.

The Livingston Circuit Court concluded that it had lacked jurisdiction to grant the divorce, but set aside only the property settlement provisions because Ms. Pantely had remarried. On appeal, this Court reinstated the entire judgment, holding that the ten-day requirement was a venue provision only and not jurisdictional. *Stamadianos v Stamadianos*, 133 Mich App 430, 434-436; 350 NW2d 268 (1984). The Michigan Supreme Court reversed and set aside the entire judgment, holding that the residency requirement was jurisdictional. *Stamadianos v Stamadianos*, 425 Mich 1; 385 NW2d 604 (1986).

In September of 1984, Ms. Pantely filed this legal malpractice action against defendants Garris and Salisbury in Washtenaw Circuit Court. In her complaint, she claimed that defendants Garris, who had originally represented both her and Mr. Stamadianos in a divorce action, had committed legal malpractice by, among other things, commencing the action in Livingston County, by alleging that Ms. Pantely was a resident of Livingston County, by counselling Ms. Pantely to testify falsely that she lived in Livingston County and by causing her to later employ incompetent counsel (Salisbury). Ms. Pantely further alleged that Salisbury, who had become her attorney after defendants Garris withdrew, had committed legal malpractice by insisting that the Livingston Circuit Court set aside the entire judgment and by advising Ms. Pantely's second husband, whom she had

married after the original ill-fated judgment was entered, to move out of the marital home. Ms. Pantely asserted that as a result of defendants' malpractice she had suffered emotional distress, humiliation, embarrassment, and damage to her reputation and had incurred unnecessary legal expenses and had lost the society and companionship of her second husband.

Defendants Garris and Salisbury moved separately for summary disposition pursuant to MCR 2.116(C)(10). Defendants Garris argued that the undisputed facts showed that Ms. Pantely admitted committing perjury before the Livingston Circuit Court in order to obtain a divorce, therefore, Ms. Pantely was in pari delicto with defendants Garris and should not be allowed to profit from her own unsuccessful fraud. Salisbury argued that the undisputed facts showed that he did not represent Ms. Pantely when she perpetrated fraud upon the Livingston Circuit Court, therefore, the divorce court's lack of jurisdiction and her subsequent legal and emotional difficulties were not attributable to him. Defendants Garris also moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that Ms. Pantely's complaint was barred by the statute of limitations.

In an order entered on January 15, 1987, the Washtenaw Circuit Court granted the motion by defendants Garris for summary disposition pursuant to MCR 2.116(C)(10). The trial court concluded that, by perpetrating a fraud on the Livingston Circuit Court in a failed attempt to obtain a divorce, Ms. Pantely was in pari delicto with defendants Garris and that the Washtenaw Circuit Court would not aid a party who founded a cause of action upon an immoral or illegal act. The court denied the motion by defendants Garris for summary disposition based on the statute of limita-

tions, finding that a factual dispute existed as to when defendants Garris had ceased performing legal services for Ms. Pantely. The trial court granted Salisbury's motion for summary disposition pursuant to MCR 2.116(C)(10). Ms. Pantely filed a claim of appeal and this Court granted the motion by defendants Garris for leave to file a delayed cross appeal on the statute of limitations question.

The central issue presented is whether the trial court erred in concluding that Ms. Pantely's claim of legal malpractice against defendants Garris is barred by the doctrine of in pari delicto. Ms. Pantely argues that the court did err because material issues of fact remained concerning the relationship between the parties and their respective roles in the divorce proceedings.

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions and other documentary evidence and must give the benefit of any reasonable doubt to the nonmoving party, drawing any reasonable inferences in favor of that party. The nonmoving party has the burden of establishing that a genuine issue of material fact exists in response to a properly filed and supported motion for summary disposition. A grant of summary disposition under subsection (C)(10) is proper only if the court is satisfied that no possible factual development could justify recovery by the nonmoving party. This Court is liberal in finding that a genuine issue of material fact exists. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988); *Loftis v G T Products, Inc,* 167 Mich App 787, 790-791; 423 NW2d 358 (1988).

The trial court's decision rests squarely on the fact that Ms. Pantely admittedly perjured herself

and the court's assumption, for purposes of the motion only, that she did so on the advice of her lawyers. Given the admitted and assumed facts, the trial court found that the lawyers were entitled to judgment as a matter of law because the client was in pari delicto. Of course, this Court also makes no finding that the defendants counselled perjury; we merely assume so for purposes of this opinion.

The maxim, *in pari delicto potior est conditio defendentis* (in cases of equal fault, the position of the defendant is stronger), like all maxims, can both confound and inform our analysis. Confound if courts substitute phrases, even venerated Latin phrases, for an understanding of the principles they embody. Inform if courts instead view the maxim as a helpful distillation of legal rules applied in hundreds of specific cases over centuries of common-law decision making.

In pari delicto, as a common-law doctrine, expresses the principle that wrongdoers ought each to bear the untoward consequences of their wrongdoing without legal recompense or recourse. As noted by the trial judge, courts should not lend their aid to one who founds a cause of action on an immoral or illegal act. In the familiar economic language of the Chicago School, among wrongdoers equally at fault the law ought not to redistribute losses caused by the wrong itself, but rather should leave the parties where it finds them. Suit is barred not because the defendant is right, but rather because the plaintiff, being equally wrong, has forfeited any claim to the aid of the court. See, for example, *Jones v Chennault*, 323 Mich 261; 35 NW2d 256 (1948).

These general principles, all encompassed by the maxim in pari delicto, find voice in the law of contracts, 2 Restatement Contracts, § 598, p 1109;

2 Restatement Contracts, 2d, §§ 197-198, pp 71-74, and, most recurrently, in the law of equity with respect to the doctrine of "clean hands." Appellate courts in other states have held that in pari delicto may bar a claim of legal malpractice. *Robins v Lasky,* 123 Ill App 3d 194, 201; 462 NE2d 774 (1984); *Feld & Sons, Inc v Pechner, Dorfman, Wolfee, Rounick & Cabot,* 312 Pa Super 125, 130; 458 A2d 545 (1983); *Evans v Cameron,* 121 Wis 2d 421, 427; 360 NW2d 25 (1985).

In this case, Ms. Pantely admits her own wrongdoing but relies on two exceptions to the bar of in pari delicto, both drawn from Justice Story:

> And indeed in cases where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto*; for there may be and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be. [1 Story, Equity Jurisprudence (14th ed), § 423, pp 399-400.]

First, Ms. Pantely denies she is equally at fault or, more precisely for purposes of the motion, asserts that there exists a genuine issue of fact as to the relative wrongdoing of herself and her lawyers. After all, she says, she lied at the direction of her attorneys at a time when she was emotionally distraught and desperate to secure a divorce. In sum, she contends she acted "under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition"

and that her wrongdoing is less reprehensible than that of her lawyers.

We can readily envision legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault. But perjury is not complex; and telling the truth poses no dilemma. Even against the backdrop of a moral relativism that passes for intellectual sophistication in contemporary America, perjury is wrong. More pointedly, it is a crime. MCL 750.422; MSA 28.664. A law degree does not add to one's awareness that perjury is immoral and illegal, any more than an accounting degree adds to one's awareness that tax fraud is immoral and illegal. We agree with the views expressed by the Wisconsin Supreme Court in *Evans, supra,* 121 Wis 2d 428:

> There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie.

Likewise, we fully appreciate the stress Ms. Pantely was forced to cope with during the divorce proceedings. But we cannot adopt her view that this renders her conduct less wrong than that of her lawyers. If stress provided an excuse for per-

jury, we would do well to abolish the oath and the hypocrisy it would foster.

> They had chosen to put private welfare above duty to the state. The state would not concern itself with the readjustment of their burdens unless for some better reason than the fact that indifference to duty had followed hard upon temptation. Excuse would seldom fail if temptation could supply it. [Cardozo, J., in *Union Exchange Nat'l Bank of New York v Joseph,* 231 NY 250, 254; 131 NE 905 (1921).]

We reject, for these reasons, the contention that the parties were not in pari delicto.

Ms. Pantely further argues however that public policy requires that she be permitted to recover even though equally in the wrong. In Story's words, she claims there is "on the part of the court itself a necessity supporting the public interest or public policy . . . however reprehensible the acts of the parties may be." Indeed, fair-minded and conscientious observers could well conclude that the public interest in the integrity of the Bar requires that errant members be called to task even if a perjuring client is the immediate beneficiary. Although we share the goal, we eschew the means suggested.

Attorneys owe duties of fidelity and candor to their clients, their profession, the courts and the public. The misconduct alleged here harms the profession, the courts and the public. To each, counsel must account. To the profession by way of discipline or disbarment; to the courts by way of contempt proceedings; to the public by way of criminal prosecution. All who suffer harm have recourse through remedies of lasting consequence to counsel. To argue that an equal partner in the alleged perjury can clothe herself in the vicarious

virtue of the public interest and recover damages caused by her own perjury is to willingly suspend disbelief. As the *Evans* Court noted:

> Although the public interest is served by discouraging attorney misconduct, it would be inappropriate to promote that interest by removing the damage to those who deliberately and willfully lie under oath in bankruptcy proceedings. A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught. The attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action. [*Evans, supra,* 121 Wis 2d 428.]

We conclude that Ms. Pantely's claims against defendants Garris are barred by the doctrine of in pari delicto. Since all of the losses claimed resulted from the Supreme Court's decision to set aside the Livingston County judgment and since that decision was premised solely upon Ms. Pantely's perjury, that perjury bars all claims against defendants Garris.

Ms. Pantely also argues the trial court erred by granting summary disposition under subsection (C)(10) in favor of defendant Salisbury. In her complaint, Ms. Pantely alleged that Salisbury committed legal malpractice by insisting the Livingston Circuit Court set aside the original judgment and by advising Pantely's second husband to move out of the marital home. In an action for legal malpractice the plaintiff must prove (1) the existence of an attorney-client relationship, (2) the acts of the attorney which are alleged to have constituted negligence, (3) that the negligence proximately caused the injury, and (4) the fact and the

extent of the injury alleged. *Adell v Sommers, Schwartz, Silver & Schwartz, PC,* 170 Mich App 196, 204; 428 NW2d 26 (1988).

We conclude the trial court properly granted summary disposition in favor of Mr. Salisbury. The proximate cause of Pantely's claimed injuries was her act of knowingly committing perjury in the Livingston Circuit Court in an effort to obtain a divorce. No act by Mr. Salisbury caused the Supreme Court to determine that the trial court had lacked jurisdiction to grant the divorce. *Stamadianos, supra,* 425 Mich 14. In addition, Mr. Salisbury's advice was not a proximate cause of Ms. Pantely's second husband's decision to leave the marital home. The trial court properly dismissed Pantely's claims against Mr. Salisbury.

Defendants Garris argue that the trial court erred by denying their motion for summary disposition brought pursuant to MCR 2.116(C)(7) and based on the statute of limitations on the grounds that a factual dispute existed as to when defendants had ceased performing legal services for Pantely. In her complaint, which was filed on September 12, 1984, Pantely alleged that defendants Garris had performed legal services for her as recently as August 24, 1984. Defendants Garris asserted that they had ceased performing legal services for Pantely by July, 1982, at the latest. When reviewing a summary disposition motion brought pursuant to MCR 2.116(C)(7), this Court must accept all of the plaintiff's well-pled factual allegations as true and must construe them most favorably to the plaintiff. *Stroud v Ward,* 169 Mich App 1, 4; 425 NW2d 490 (1988), lv den 432 Mich 852 (1989).

An action for legal malpractice must be brought within two years of the date of the last service performed by the attorney or within six months

after the plaintiff discovers or should have discovered the existence of the claim. MCL 600.5805(4); MSA 27A.5805(4); MCL 600.5838; MSA 27A.5838; *Adell, supra,* 170 Mich App 206.

The trial court properly denied the motion by defendants Garris for summary disposition. Taking as true Pantely's allegation that defendants Garris performed legal services for her as late as August 24, 1984, Pantely's complaint was timely filed. To the extent a factual question as to the date of last service existed, that question could only be answered in accordance with the procedure established in MCR 2.116(I)(3).

Affirmed. Costs to appellees.