WILLIAM WHITEHEART D/B/A WHITEHEART ADVERTISING COMPANY, PLAINTIFF-APPELLANT v. BETTY STROTHER WALLER AND WALLER & STEWART, LLP (FORMERLY KNOWN AS WALLER, STROUD, STEWART, & ARANEDA, LLP), DEFENDANTS-APPELLEES

No. COA08-1261

(Filed 18 August 2009)

**1. Collateral Estoppel and Res Judicata— legal malpractice—verdict—indicated plaintiffs' intentional wrongdoing**

A *de novo* review revealed the trial court did not err in a legal malpractice action by concluding that the verdicts against plaintiff in the Forsyth County cases established as a matter of law plaintiff's intentional wrongdoing.

**2. Attorneys— legal malpractice—intentional wrongdoing— *in pari delicto***

The trial court did not err in a legal malpractice action by concluding that plaintiff's intentional wrongdoing barred any recovery from defendants for losses that may have resulted from defendants' misconduct under a theory of *in pari delicto*.

Appeal by plaintiff from order entered 13 August 2008 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 6 April 2009.

*Randolph M. James, P.C., by Randolph M. James, for plaintiff-appellant.*

*Poyner & Spruill, LLP, by E. Fitzgerald Parnell, III and Cynthia L. Van Horne, for defendants-appellees.*

CALABRIA, Judge.

William Whiteheart d/b/a Whiteheart Advertising Company ("plaintiff") appeals an order dismissing his complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. We affirm the trial court.

Plaintiff is in the business of billboard advertising on the highways of North Carolina. Beginning in 1983, the predecessor to plaintiff's company maintained a billboard on Interstate 77, near Statesville, North Carolina, located on land owned by a predecessor of the Beroth Oil Company ("Beroth"). The original lease for this billboard expired on 30 June 1998. The lease could have been renewed

by agreement of the parties for additional terms; however, plaintiff failed to pay rent from July 1998 until 25 July 2000. Despite notices from Beroth for past due rent, plaintiff continued to use the billboard on Beroth's property ("the Beroth property") during this time.

Sometime before July 2000, a competitor of plaintiff, Darlene Payne ("Ms. Payne"), through her company Skyad, LLC ("Skyad"), offered to lease the billboard location from Beroth. On or about 13 July 2000, Ms. Payne's attorney, pursuant to instructions received from Beroth, sent plaintiff a letter requesting the removal of his billboard from the Beroth property. Plaintiff responded by sending Beroth a check in the amount of $2,000 for past due rent for the period from 1 July 1999 to 30 June 2000. In addition to the check, plaintiff enclosed a proposed lease for the period from 1 July 2000 to 30 June 2001. Beroth rejected the lease offer on 5 February 2001 and returned plaintiff's unnegotiated check with the unsigned lease. At that time, Beroth gave plaintiff thirty days notice to remove his billboard from the property. Plaintiff failed to comply with this demand, as well as several others from Beroth in the ensuing months.

On 26 March 2001, plaintiff sent a letter to his various competitors "alerting" them about Ms. Payne. In this letter, plaintiff asserted that Ms. Payne was a "lease jumper" and that she and her business practices were unprofessional, unethical, and despicable. Plaintiff also referred to Ms. Payne personally in additional derogatory terms. Although plaintiff's attorney, Betty Waller ("defendant"), reviewed the letter before it was sent, she failed to advise plaintiff of the potential liability that could result from sending such a *per se* defamatory document.

On 4 May 2001, plaintiff, through the services of defendant, obtained a Temporary Restraining Order that permitted plaintiff to continue to maintain his sign on the Beroth property, while at the same time preventing Ms. Payne from either leasing the property or obtaining a North Carolina Department of Transportation ("NCDOT") outdoor advertising permit for the property. Plaintiff also filed a verified complaint against, *inter alios*, Ms. Payne and Beroth in Iredell County Superior Court requesting a declaratory judgment.

On 7 May 2001, plaintiff submitted a check to NCDOT to pay the renewal fee for his permit on the Beroth property. Plaintiff falsely asserted in his renewal certification that he had Beroth's permission and consent to continue to maintain his billboard. Ms. Payne subsequently applied for an NCDOT permit on the Beroth property, but

her application was denied because plaintiff already held a permit for the property.

On 14 May 2001, the trial court denied plaintiff's motion to convert the Temporary Restraining Order into a preliminary injunction. Plaintiff then removed his billboard from the Beroth property on 4 June 2001. Beroth and Ms. Payne subsequently moved for summary judgment against plaintiff, at which time plaintiff filed a voluntary dismissal of his claims in the Iredell County action.

After plaintiff voluntarily dismissed his claims, both Beroth and Ms. Payne filed actions against plaintiff in the Superior Court of Forsyth County ("Forsyth County cases") for, *inter alia,* malicious prosecution, abuse of process, libel *per se,* slander of title, unfair and deceptive trade practices, unjust enrichment, and *quantum meruit.* Defendant served as plaintiff's counsel in the Forsyth County cases. The jury returned a verdict against plaintiff. Beroth and Ms. Payne were awarded combined damages in excess of $700,000. On appeal, these judgments were affirmed by this Court in *Beroth Oil Co. v. Whiteheart; Am. Adver. Consultants, Inc. v. Whiteheart,* 173 N.C. App. 89, 618 S.E.2d 739 (2005).

After satisfying the judgments against him, plaintiff filed an action in Forsyth County Superior Court against defendant and her law firm Waller & Stewart, LLP (formerly known as Waller, Stroud, Stewart, & Araneda, LLP) (collectively "defendants") for legal malpractice, seeking to recover damages sufficient to cover the judgments noted above. Defendants moved to dismiss the action pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, and on 7 August 2008, the court granted defendants' motion. Plaintiff appeals.

## I. Standard of Review

Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review for a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. Nat'l Bank of N.C.,* 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief. *See Dixon v. Stuart,* 85 N.C. App. 338, 354 S.E.2d

757, 758 (1987). Dismissal under Rule 12(b)(6) is proper when one or more of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). A superior court's decision to dismiss a complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is reviewed *de novo* by this Court. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003), *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

## II. Collateral Estoppel

[1] Plaintiff contends that the trial judge erred when she concluded that the verdicts against the plaintiff in the Forsyth County cases "establish as a matter of law [plaintiff's] intentional wrongdoing." The doctrine of collateral estoppel, also referred to as "issue preclusion" or "estoppel by judgment", precludes relitigation of a fact, question or right in issue:

> when there has been a final judgment or decree, necessarily determining [the] fact, question or right in issue, rendered by a court of record and of competent jurisdiction, and there is a later suit involving an issue as to the identical fact, question or right theretofore determined, and involving identical parties or parties in privity with a party or parties to the prior suit.

*King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973) (quoting *Masters v. Dunstan*, 256 N.C. 520, 524, 124 S.E.2d 574, 576 (1962)). The requirements for the identity of issues to which collateral estoppel may be applied have been established by the Supreme Court as follows: (1) the issues must be the same as those involved in the prior action; (2) the issues must have been raised and actually litigated in the prior action; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment. *Id.* at 358, 200 S.E.2d at 806.

The judgments against the plaintiff in Forsyth County necessarily decided his liability for his actions. The issue regarding whether plaintiff engaged in intentional acts giving rise to legal liability was litigated and was necessary for the jury's verdicts and the superior court's judgments against plaintiff. Plaintiff is not permitted to re-

litigate the issue in the hope of obtaining a better result. *See, e.g.,*
*Summer v. Allran,* 100 N.C. App. 182, 184, 394 S.E.2d 689, 690-91
(1990) (malpractice plaintiff could not sue her attorney for loss of
alimony and increased child support as she previously litigated those
issues and lost). The trial court correctly applied collateral estoppel
in determining that the jury verdicts in the Forsyth County cases,
finding the plaintiff liable for malicious prosecution, abuse of
process, libel *per se,* unfair and deceptive trade practices, slander of
title, unjust enrichment, and *quantum meruit,* established as a mat-
ter of law plaintiff's intentional wrongdoing. Such a determination is
fatal to plaintiff's claims under the doctrine of *in pari delicto.*

### III.  *In Pari Delicto*

**[2]** Plaintiff argues that his claim should not be barred because he
was not *in pari delicto* ("in equal fault") with defendants. Our courts
have long recognized the *in pari delicto* doctrine, which prevents the
courts from redistributing losses among wrongdoers. "The law gener-
ally forbids redress to one for an injury done him by another, if he
himself first be in the wrong about the same matter whereof he com-
plains." *Byers v. Byers,* 223 N.C. 85, 90, 25 S.E.2d 466, 469-70 (1943).
The courts of North Carolina have yet to apply the *in pari delicto*
doctrine to a legal malpractice case, but it has been used in this con-
text in several other jurisdictions. *See, e.g., Gen. Car & Truck*
*Leasing Sys., Inc. v. Lane & Waterman,* 557 N.W.2d 274 (Iowa 1996)
(plaintiffs' malpractice claim dismissed because they acted *in pari*
*delicto* with defendant law firm in knowingly making false statements
in affidavits submitted to Patent and Trademark Office); *Evans v.*
*Cameron,* 121 Wis. 2d 421, 360 N.W.2d 25 (1985) (plaintiff's malprac-
tice action barred by defense of *in pari delicto* where the client lied
under oath in a bankruptcy proceeding about transferring money to
her mother, even though she claimed her testimony was based upon
the advice of her attorney); *Robins v. Lasky,* 123 Ill.App.3d 194,
201-02, 462 N.E.2d 774, 779 (1984) (plaintiff's malpractice action
barred by defense of *in pari delicto* when he followed defendant
attorneys' advice to relocate and establish his permanent residence in
another state in order to avoid service of process in Illinois). When
applying *in pari delicto* in legal malpractice actions, some courts
have distinguished between wrongdoing that would be obvious to the
plaintiff and "legal matters so complex . . . that a client could follow
an attorney's advice, do wrong and still maintain suit on the basis of
not being equally at fault." *Pantely v. Garris, Garris & Garris, P.C.,*
180 Mich.App. 768, 776, 447 N.W.2d 864, 868 (1989). Such a distinction

is proper for circumstances in which advice given by an attorney is sufficiently complex that a client would be unable to ascertain the illegality of following the advice. *Id.*

The instant case presents no such complexity. Plaintiff was well aware that he did not possess either a valid lease or permission from the owner of the Beroth property to maintain his billboard. Yet he continued to assert his non-existent interests, giving rise to his liability. His verified complaint, in Iredell County, asserted that he had a valid lease for the Beroth property and his application to the NCDOT asserted he had the permission of the property owner to maintain his billboard. Plaintiff knew that neither of these facts were true. The defamatory letter plaintiff wrote implied that Ms. Payne was intentionally interfering with his contractual relationship with Beroth, while at the same time plaintiff continued to assure Beroth that he understood no such relationship existed and that he intended to vacate their property. Plaintiff is liable since he was well aware these actions were unethical. Regardless of the nature of the advice from defendant, plaintiff knew that the information was incorrect. The information he presented to the courts, NCDOT, his fellow billboard industry members, and Beroth was also incorrect. It would not serve justice to relieve plaintiff from liability in these circumstances.

## IV. Conclusion

Plaintiff persuasively argues that defendant violated several North Carolina State Bar Rules of Professional Conduct in her handling of plaintiff's matters. However, in a case such as this, where the plaintiff has himself engaged in significant misconduct, it is not appropriate to address the attorney's misconduct through an action for malpractice. We agree with the holding of the Supreme Court of Wisconsin:

> A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught. The attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action.

*Evans v. Cameron*, 121 Wis.2d 421, 428, 360 N.W.2d 25, 29 (1985).

The trial judge correctly decided that plaintiff's intentional wrongdoing barred any recovery from defendants for the losses that may have resulted from defendants' misconduct, under a theory

**U.S. TRUST CO., N.A. v. STANFORD GRP. CO.**

[199 N.C. App. 287 (2009)]

of *in pari delicto*. Because this decision acts as a full bar to any recovery by the plaintiff, it is unnecessary to consider plaintiff's additional claims.

Affirmed.

Chief Judge MARTIN and Judge STEELMAN concur.