ELMORE, Judge.
 

 *420
 
 William Barry Freedman (appellant) appeals from the trial court's order dismissing with prejudice his legal malpractice claim. Freedman Farms, Inc. (Freedman Farms) does not appeal from the order. After careful review, we affirm.
 

 I. Background
 

 In December 2014, appellant and Freedman Farms filed a complaint against attorneys Wayne James Payne and Michael R. Ramos (defendants) in New Hanover County Superior Court following defendants' representation of appellant in federal district court. In the complaint, appellant alleged professional malpractice, breach of fiduciary duty, constructive fraud, breach of contract, and fraud. Freedman Farms alleged fraud and breach of contract by a third-party beneficiary. Defendants filed separate motions to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.
 

 The events preceding the complaint are as follows: Appellant and his parents manage Freedman Farms, a multi-county farming operation in which they harvest wheat, corn, and soybeans, and operate several hog farms. On or about 13 December 2007 through 19 December 2007, Freedman Farms discharged approximately 332,000 gallons of liquefied hog waste from one of its waste treatment lagoons into Browder's Branch, a water of the United States. Through a coordinated effort with state and federal authorities, approximately 169,000 gallons of the waste was pumped out of Browder's Branch. Subsequently, appellant and Freedman Farms were charged with intentionally violating the Clean Water Act. Appellant retained defendants to represent him.
 

 The trial began on 28 June 2011, and the prosecution put on evidence for five days. In appellant's complaint, he alleges that prior to the resumption of trial on 6 July 2011, defendant Ramos told appellant that the Assistant United States Attorney (AUSA) had approached him with a plea deal. In reality, appellant states, defendant "Ramos asked AUSA Williams whether the government, in exchange for both [appellant] and Freedman Farms pleading guilty and agreeing to pay $1,000,000 in restitution and a $500,000 fine, would reduce the charges against [appellant] to a misdemeanor negligent violation of the Clean Water Act." After considering the plea deal, appellant claims that he asked defendant Ramos to negotiate the fines and restitution to $500,000, to take incarceration "completely off the table," and to make AUSA Williams agree that neither appellant nor Freedman Farms would be debarred from federal farm subsidies.
 

 *421
 
 Appellant further states in his complaint that when defendant Ramos returned from negotiating, he told appellant the following: the government was not interested in active time, the prosecutor agreed to "stand silent" at sentencing, appellant and Freedman Farms would avoid debarment from federal farm subsidies, and these promises were "part of a side-deal with [the prosecutor]-a wink-wink, nudge-nudge-and that [appellant] must not disclose this side-deal to the court," as it "would cost [appellant] the chance to assure that he would not be incarcerated." Accordingly, Freedman Farms pleaded guilty to knowingly violating the Clean Water Act, and appellant pleaded guilty to negligently violating the Clean Water Act. On 6 July 2011, the district court approved both plea agreements. Contrary to the terms of the alleged side-deal, in appellant's plea agreement, "the government
 
 *647
 
 expressly reserve[d] the right to make a sentence recommendation ... and made no representations as to the effects of the guilty plea on debarment from Federal farm subsidies."
 

 On 13 February 2012, the district court held a sentencing hearing for appellant and Freedman Farms. Appellant was sentenced to six months in prison and six months of house arrest. Defendants apparently filed three motions to reconsider, which were all denied, and appellant began his sentence on 15 March 2013. Appellant obtained a new attorney who filed an Emergency Motion to Vacate, Set Aside, or Correct Sentence on 9 May 2013 pursuant to
 
 28 U.S.C. § 2255
 
 due to ineffective assistance of counsel. On 15 May 2013, appellant was released on bail to home detention pending the outcome of the § 2255 motion.
 

 Subsequently, AUSA Bragdon filed a Consent Motion to resolve appellant's § 2255 motion. The district court held a resentencing hearing on 1 October 2013 in which it vacated appellant's previous conviction. Pursuant to a new plea agreement, appellant again pleaded guilty to negligently violating the Clean Water Act. The district court imposed a sentence of "five years of probation, during which [appellant] will serve two months of incarceration, this being credited with the two months previously served, and ten months going forward of home detention, subject to electronic monitoring[.]" Appellant was also required to pay the remaining restitution that Freedman Farms owed by 20 December 2013.
 

 After appellant filed his complaint in New Hanover County Superior Court, appellant and defendants filed a joint motion to designate the case as exceptional. Chief Justice Mark Martin granted the motion and assigned Senior Resident Superior Court Judge Robert H. Hobgood to preside over its disposition. On 9 February 2015, the trial court held a hearing regarding defendants' motions to dismiss. It concluded,
 
 *422
 
 "Defendants ['] ... motions to dismiss the First Claim for Relief (Legal Malpractice) should be allowed with prejudice based on
 
 in pari delicto
 
 as set forth in
 
 Whiteheart v. Waller,
 

 199 N.C.App. 281
 
 ,
 
 681 S.E.2d 419
 
 (2009) [.]" Pursuant to N.C. Gen.Stat. § 1A-1, Rule 54(b), the trial court certified that there is no just reason to delay appeal of its final order. Appellant appeals.
 

 II. Analysis
 

 "The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true."
 
 Burgin v. Owen,
 

 181 N.C.App. 511
 
 , 512,
 
 640 S.E.2d 427
 
 , 428 (2007) (citation omitted). "Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."
 
 Wood v. Guilford Cnty.,
 

 355 N.C. 161
 
 , 166,
 
 558 S.E.2d 490
 
 , 494 (2002) (citation omitted). "On appeal, we review the pleadings
 
 de novo
 
 'to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.' "
 
 Gilmore v. Gilmore,
 

 229 N.C.App. 347
 
 , 350,
 
 748 S.E.2d 42
 
 , 45 (2013) (quoting
 
 Page v. Lexington Ins. Co.,
 

 177 N.C.App. 246
 
 , 248,
 
 628 S.E.2d 427
 
 , 428 (2006) ).
 

 Appellant argues that the trial court erred in granting defendants' motions to dismiss because the
 
 in pari delicto
 
 doctrine does not apply to defendants' representation of appellant in a complex federal criminal prosecution and appellant's complaint does not establish as a matter of law his intentional wrongdoing. Defendant Payne claims, "Based on [appellant's] own admissions, he lied to the Federal Court with full knowledge that he was lying, and did so with full intention to benefit from his lies[.]" Similarly, defendant Ramos argues that appellant "alleges a conspiracy, by which a
 
 sub rosa
 
 agreement was to be concealed from a federal judge so that [appellant] could reap the benefit of no jail time." Accordingly, defendants claim that the
 
 in pari delicto
 
 doctrine bars any redress because appellant is in the wrong about the same matter he complains of.
 

 *648
 
 "In a professional malpractice case predicated upon a theory of an attorney's negligence, the plaintiff has the burden of proving by the greater weight of the evidence: (1) that the attorney breached the duties owed to his client, as set forth by
 
 Hodges v. Carter,
 

 239 N.C. 517
 
 ,
 
 80 S.E.2d 144
 
 (1954), and that this negligence (2) proximately caused (3) damage to the plaintiff."
 

 *423
 

 Rorrer v. Cooke,
 

 313 N.C. 338
 
 , 355,
 
 329 S.E.2d 355
 
 , 365-66 (1985). " 'To establish that negligence is a proximate cause of the loss suffered, the plaintiff must establish that the loss would not have occurred but for the attorney's conduct.' "
 
 Belk v. Cheshire,
 

 159 N.C.App. 325
 
 , 330,
 
 583 S.E.2d 700
 
 , 704 (2003) (quoting
 
 Rorrer,
 

 313 N.C. at 361
 
 ,
 
 329 S.E.2d at
 
 369 ). This Court has previously concluded, "[T]he burden of proof required to show proximate cause in an action for legal malpractice arising in the context of a criminal proceeding is, for public policy reasons, necessarily a high one."
 
 Id.
 
 at 332,
 
 583 S.E.2d at 706
 
 . We declined, however, to adopt a bright-line rule.
 

 Id.
 

 Regarding the legal malpractice claim, appellant alleged nine duties that defendants owed him throughout their representation and seventeen different ways that defendants breached those duties. Appellant concluded, "Defendants' breach of these duties is a direct and proximate cause of damage to [appellant], in an amount in excess of $10,000." In response, defendants collectively asserted a number of affirmative defenses, including the
 
 in pari delicto
 
 doctrine.
 

 "The common law defense by which the defendants seek to shield themselves from liability in the present case arises from the maxim
 
 in pari delicto potior est conditio possidentis [defendentis]
 
 " meaning "in a case of equal or mutual fault ... the condition of the party in possession [or defending] is the better one."
 
 Skinner v. E.F. Hutton & Co.,
 

 314 N.C. 267
 
 , 270,
 
 333 S.E.2d 236
 
 , 239 (1985) (quoting Black's Law Dictionary 711 (rev. 5th ed.1979)). The doctrine, well recognized in this State, "prevents the courts from redistributing losses among wrongdoers."
 
 Whiteheart v. Waller,
 

 199 N.C.App. 281
 
 , 285,
 
 681 S.E.2d 419
 
 , 422 (2009). "The law generally forbids redress to one for an injury done him by another, if he himself first be in the wrong about the same matter whereof he complains."
 
 Byers v. Byers,
 

 223 N.C. 85
 
 , 90,
 
 25 S.E.2d 466
 
 , 469-70 (1943). "No one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own iniquity, or to acquire any rights by his own crime."
 
 Id.
 
 at 90,
 
 25 S.E.2d at 470
 
 .
 

 In a case of first impression, this Court applied the
 
 in pari delicto
 
 doctrine to a legal malpractice claim in
 
 Whiteheart v. Waller.
 
 We stated, "When applying
 
 in pari delicto
 
 in legal malpractice actions, some courts have distinguished between wrongdoing that would be obvious to the plaintiff and 'legal matters so complex ... that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault.' "
 
 Whiteheart,
 

 199 N.C.App. at 285
 
 ,
 
 681 S.E.2d at 422
 
 (quoting
 
 Pantely v. Garris, Garris & Garris, P.C.,
 

 180 Mich.App. 768
 
 , 776,
 
 447 N.W.2d 864
 
 , 868 (1989) ). However, "Such a distinction is
 
 *424
 
 proper for circumstances in which advice given by an attorney is sufficiently complex that a client would be unable to ascertain the illegality of following the advice."
 
 Id.
 
 at 285-86,
 
 681 S.E.2d at 422
 
 ,
 
 681 S.E.2d at
 
 422 (citing
 
 Pantely,
 

 180 Mich.App. at 776
 
 ,
 
 447 N.W.2d at
 
 868 ). We concluded, "The instant case presents no such complexity.... Plaintiff is liable since he was well aware [his] actions were unethical. Regardless of the nature of the advice from [his attorney], plaintiff knew that the information [he presented to the courts] was incorrect."
 
 Id.
 
 at 286,
 
 681 S.E.2d at 422-23
 
 . Accordingly, we held that "plaintiff's intentional wrongdoing barred any recovery from defendants for the losses that may have resulted from defendants' misconduct, under a theory of
 
 in pari delicto.
 
 "
 
 Id.
 
 at 286-87,
 
 681 S.E.2d at 423
 
 .
 

 Here, treating the allegations in appellant's complaint as true as we must at this stage, defendants are at fault for striking a "side-deal" with the prosecutor regarding prison time and federal farm subsidies, and for instructing appellant that he must not disclose the side-deal to the court. Appellant is at fault for lying under oath in federal court by affirming that he was not pleading
 
 *649
 
 guilty based on promises not contained in the plea agreement. Appellant argues that this "is not a suit based on damage suffered as a result of being caught committing a crime Ramos and Payne recommended [,]" however, we fail to see how it is not.
 

 Although appellant claims that his complaint does not establish his intentional wrongdoing, we agree with defendants that appellant's complaint shows otherwise. Appellant's complaint reveals the following:
 

 34. Ramos returned and told [appellant] that AUSA Williams said the government was not interested in active time and that AUSA Williams had agreed to "stand silent" at sentencing and would not argue for an active sentence.
 

 ....
 

 36. Ramos also told [appellant] that ... AUSA Williams told him that the government did not want to pursue debarment [from federal farm subsidies].
 

 ....
 

 38. Ramos then warned [appellant] that these promises from AUSA Williams were part of a side-deal with Williams-a wink-wink, nudge-nudge-and that [appellant] must not disclose this side-deal to the court, because this would upset Judge Flanagan and would cost
 
 *425
 
 [appellant] the chance to assure that he would not be incarcerated.
 

 ....
 

 41. .... [F]aced with the opportunity to avoid incarceration and debarment, ... [appellant] agreed to plead guilty, on the terms as described by Ramos.
 

 ....
 

 43. Ramos and Payne lied to [appellant] and Ms. Pearl about having an undisclosable side-deal, as a result of which [appellant] pled guilty, Ms. Pearl pled guilty on behalf of Freedman Farm[s], and both [appellant] and Freedman Farms became liable for $1,500,000 in fines and restitution.
 

 44. The actual and only plea deal with AUSA Williams was precisely what appeared in the Plea Agreement itself that the government expressly reserve[d] the right to make a sentence recommendation (¶ 4(b)) and made no representations as to the effects of the guilty plea on debarment from Federal farm subsidies.
 

 As in
 
 Whiteheart,
 
 we conclude that the trial court correctly decided that appellant's intentional wrongdoing bars any recovery from defendants for losses that may have resulted from defendants' misconduct.
 
 See
 

 Whiteheart,
 

 199 N.C.App. at 286-87
 
 ,
 
 681 S.E.2d at 423
 
 . Appellant lied under oath in order to benefit from an alleged side-deal in which he thought he could pay $1,500,000 to avoid going to prison. When the deal unraveled and appellant was bound by the express terms of his plea agreement, appellant attempted to redistribute the loss, which the courts of this State will not do.
 
 See
 

 id.
 
 at 285,
 
 681 S.E.2d at 422
 
 . Because appellant is in the wrong about the same matter he complains of, the law forbids redress.
 
 Byers,
 

 223 N.C. at 90
 
 ,
 
 25 S.E.2d at 469-70
 
 . Although the underlying criminal prosecution of appellant may have been complex, appellant was able to ascertain the illegality of his actions during the sentencing hearing.
 
 See
 

 Pantely,
 

 180 Mich.App. at 776
 
 ,
 
 447 N.W.2d at 868
 
 ("A law degree does not add to one's awareness that perjury is immoral and illegal[.]").
 

 The allegations of the complaint are discreditable to both parties. They blacken the character of the plaintiff as well as soil the reputation of the defendant. As between
 
 *426
 
 them, the law refuses to lend a helping hand. The policy of the civil courts is not to paddle in muddy water, but to remit the parties, when
 
 in pari delicto,
 
 to their own folly. So, in the instant case, the plaintiff must fail in his suit.
 

 Bean v. Detective Co.,
 

 206 N.C. 125
 
 , 126,
 
 173 S.E. 5
 
 , 6 (1934).
 

 III. Conclusion
 

 In sum, we affirm the trial court's order granting defendants' motions to dismiss with prejudice appellant's claim for legal malpractice based on
 
 in pari delicto.
 

 AFFIRMED.
 

 Judges STROUD and DIETZ concur.