ZACHARY, Judge.
 

 *282
 
 William Barry Freedman (appellant) appeals from an order of the trial court dismissing his claims for breach of fiduciary duty, breach of contract, constructive fraud, and fraud brought against Wayne James Payne and Michael R. Ramos (defendants). On appeal, appellant argues that the trial court erred by dismissing his claims "based upon the law of the case and
 
 in pari delicto
 
 doctrines." After careful review of
 
 *283
 
 appellant's arguments in light of the record on appeal and the applicable law, we conclude that the trial court did not err.
 

 I. Background
 

 On 1 December 2014, appellant and Freedman Farms filed a complaint against defendants
 
 *688
 
 "in New Hanover County Superior Court following defendants' representation of appellant in federal district court. In the complaint, appellant alleged professional malpractice, breach of fiduciary duty, constructive fraud, breach of contract, and fraud. Freedman Farms alleged fraud and breach of contract by a third-party beneficiary."
 
 Freedman v. Payne
 
 , --- N.C.App. ----, ----,
 
 784 S.E.2d 644
 
 , 646 (2016) (
 
 Freedman I
 
 ). On 18 December 2014, our Supreme Court granted defendants' motion to designate the case as exceptional and assigned the case to Senior Resident Superior Court Judge Robert H. Hobgood.
 

 Defendants filed separate motions to dismiss the complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief could be granted. On 19 March 2015, the court entered an order concluding that defendants' motions to dismiss appellant's claim for legal malpractice "should be allowed with prejudice based on
 
 in pari delicto
 
 [.]" The trial court denied defendants' motions to dismiss the remaining claims, and certified the matter for appellate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2015). Plaintiff appealed the dismissal of his claim of legal malpractice to this Court, which affirmed the trial court's order in
 
 Freedman I.
 
 The factual background of this case was summarized in
 
 Freedman I
 
 :
 

 Appellant and his parents manage Freedman Farms, a multi-county farming operation in which they ... operate several hog farms.... [In] December 2007, Freedman Farms discharged approximately 332,000 gallons of liquefied hog waste ... into Browder's Branch, a water of the United States.... [A]ppellant and Freedman Farms were charged with intentionally violating the Clean Water Act. Appellant retained defendants to represent him.
 

 The trial began on 28 June 2011, and the prosecution put on evidence for five days. In appellant's complaint, he alleges that prior to the resumption of trial on 6 July 2011, defendant Ramos told appellant that the Assistant United States Attorney (AUSA) had approached him with a plea deal.... [A]ppellant states [that] defendant "Ramos asked AUSA Williams whether the government, in exchange for both [appellant] and Freedman Farms pleading guilty and
 
 *284
 
 agreeing to pay $1,000,000 in restitution and a $500,000 fine, would reduce the charges against [appellant] to a misdemeanor negligent violation of the Clean Water Act." ... [A]ppellant claims that he asked defendant Ramos to negotiate the fines and restitution to $500,000, to take incarceration "completely off the table," and to make AUSA Williams agree that neither appellant nor Freedman Farms would be debarred from federal farm subsidies.
 

 Appellant further states in his complaint that when defendant Ramos returned from negotiating, he told appellant the following: the government was not interested in active time, the prosecutor agreed to "stand silent" at sentencing, appellant and Freedman Farms would avoid debarment from federal farm subsidies, and these promises were "part of a side-deal with [the prosecutor]-a wink-wink, nudge-nudge-and that [appellant] must not disclose this side-deal to the court," as it "would cost [appellant] the chance to assure that he would not be incarcerated."
 

 Accordingly, ... appellant pleaded guilty to negligently violating the Clean Water Act. On 6 July 2011, the district court approved [the] plea agreement[ ]. Contrary to the terms of the alleged side-deal, in appellant's plea agreement, "the government expressly reserve[d] the right to make a sentence recommendation ... and made no representations as to the effects of the guilty plea on debarment from Federal farm subsidies."
 

 On 13 February 2012, ... [a]ppellant was sentenced to six months in prison and six months of house arrest[.] ... Appellant obtained a new attorney[.] ... The district court held a resentencing hearing on 1 October 2013 in which it vacated appellant's previous conviction. Pursuant to a new plea agreement, appellant again pleaded guilty to negligently violating the Clean Water Act. The district court imposed a sentence of "five years of probation ... and ten months going forward of home detention[.]" ... Appellant was also required to pay the remaining restitution that Freedman Farms owed[.] ...
 

 *689
 

 Freedman I
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 646-47
 
 . Our opinion in
 
 Freedman I
 
 , which is discussed in greater detail below, held that certain allegations in appellant's complaint established that appellant had
 
 *285
 
 participated in the wrongdoing of which he accused defendants, and affirmed the trial court's dismissal of appellant's legal malpractice claim on the basis that appellant and defendants were
 
 in pari delicto
 
 .
 

 The
 
 Freedman I
 
 opinion was filed in April, 2016. Thereafter, defendants filed separate motions asking the trial court to strike certain allegations of appellant's complaint or to enter judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c) (2015), and to dismiss appellant's remaining claims for breach of contract, breach of fiduciary duty, constructive fraud, and fraud. Following a hearing conducted on 17 June 2016, the trial court entered an order on 25 July 2016 that granted defendants' motions for judgment on the pleadings and dismissed appellant's remaining claims. Appellant noted a timely appeal to this Court.
 

 II. Standard of Review
 

 This Court will "review
 
 de novo
 
 the grant of a motion to dismiss under Rule 12(b)(6) and for judgment on the pleadings under Rule 12(c)."
 
 CommScope Credit Union v. Butler & Burke,
 

 369 N.C. 48
 
 , 51,
 
 790 S.E.2d 657
 
 , 659 (2016) (citations omitted). "On a motion for judgment on the pleadings, [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false."
 
 Id
 
 . (internal quotation omitted). In ruling on a party's motion for judgment on the pleadings, "[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party."
 
 Ragsdale v. Kennedy
 
 ,
 
 286 N.C. 130
 
 , 137,
 
 209 S.E.2d 494
 
 , 499 (1974) (citation omitted). "A Rule 12(c) movant must show that the complaint ... fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar to a cause of action."
 
 CommScope
 
 ,
 
 369 N.C. at 51
 
 ,
 
 790 S.E.2d at 659
 
 (internal quotation omitted).
 

 III. Discussion
 

 The trial court dismissed appellant's claims against defendants on the grounds that appellant was
 
 in pari delicto
 
 with defendants and that the law of the case, as established by this Court's opinion in
 
 Freedman I
 
 , required dismissal of appellant's claims. On appeal, appellant argues that the trial court erred by ruling that the doctrine of
 
 in pari delicto
 
 was applicable to his claims for breach of contract, breach of fiduciary duty, constructive fraud, and fraud. Appellant also contends that the holding of
 
 Freedman I
 
 does not constitute the law of the case with regard to these claims. We have considered, but ultimately reject, these arguments.
 

 *286
 

 A. Doctrine of
 
 In Pari Delicto
 

 The courts of this State "have long recognized the
 
 in pari delicto
 
 doctrine, which prevents the courts from redistributing losses among wrongdoers."
 
 Whiteheart v. Waller
 
 ,
 
 199 N.C.App. 281
 
 , 285,
 
 681 S.E.2d 419
 
 , 422 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 813
 
 ,
 
 693 S.E.2d 353
 
 (2010). As explained in
 
 Freedman I
 
 :
 

 The common law defense by which the defendants seek to shield themselves from liability in the present case arises from the maxim
 
 in pari delicto potior est conditio possidentis [defendentis
 
 ] meaning in a case of equal or mutual fault ... the condition of the party in possession [or defending] is the better one. The doctrine, well recognized in this State, prevents the courts from redistributing losses among wrongdoers. The law generally forbids redress to one for an injury done him by another, if he himself first be in the wrong about the same matter whereof he complains. No one is permitted to profit by his own fraud, or to take advantage of his own wrong, or to found a claim on his own iniquity, or to acquire any rights by his own crime.
 

 Freedman I
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 648
 
 (internal quotations omitted).
 

 Freedman I
 
 upheld the trial court's dismissal of appellant's claim for legal malpractice based upon the doctrine of
 
 in pari delicto.
 
 Appellant's complaint alleged that defendants approached appellant about a plea agreement under the terms of which appellant would pay a substantial fine and would plead guilty to a misdemeanor offense, avoid imprisonment, and preserve access
 
 *690
 
 to certain federal programs. Appellant also alleged that defendants informed him that this was a secret "side deal" that could not be revealed to the federal judge presiding over the trial, that appellant agreed to conceal the alleged "side deal" from the judge, and that appellant lied under oath about the basis for his agreement to plead guilty.
 
 Freedman I
 
 held that certain allegations in appellant's complaint, which the Court accepted as true for purposes of a N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motion, established appellant's wrongdoing and, based upon the doctrine of
 
 in pari delicto
 
 , barred appellant from seeking recovery for legal malpractice.
 

 B. Law of the Case
 

 The "law of the case" doctrine is well-established in the jurisprudence of our State. "[C]ertain points have been decided by the prior
 
 *287
 
 [decision] of this Court and are thus the 'law of the case.' "
 
 In re IBM Credit Corp
 
 .,
 
 222 N.C.App. 418
 
 , 421-22,
 
 731 S.E.2d 444
 
 , 446 (2012). The Supreme Court of North Carolina has described the law of the case doctrine as follows:
 

 [A]s a general rule when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal.
 

 However, the doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case. The doctrine does not apply to what is said by the reviewing court, or by the writing justice, on points arising outside of the case and not embodied in the determination made by the Court. Such expressions are
 
 obiter dicta
 
 and ordinarily do not become precedents in the sense of settling the law of the case.
 

 Hayes v. Wilmington
 
 ,
 
 243 N.C. 525
 
 , 536,
 
 91 S.E.2d 673
 
 , 681-82 (1956). This Court may not revisit issues that have become the law of a case:
 

 [O]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case.... [A] succeeding panel of that court has no power to review the decision of another panel on the same question in the same case.
 

 N.C.N.B. v. Virginia Carolina Builders
 
 ,
 
 307 N.C. 563
 
 , 567,
 
 299 S.E.2d 629
 
 , 631-32 (1983). However, "the law of the case applies only to issues that were decided in the former proceeding, whether explicitly or by necessary implication[.]"
 
 Goldston v. State
 
 ,
 
 199 N.C.App. 618
 
 , 624,
 
 683 S.E.2d 237
 
 , 242 (2009).
 

 C. Discussion
 

 We next apply the principles discussed above to the facts of this case. In
 
 Freedman I
 
 , appellant appealed from the trial court's dismissal of his claim for legal malpractice on the basis of the doctrine of
 
 in pari delicto
 
 . On appeal, appellant argued that the trial court erred "because ... appellant's complaint does not establish as a matter of law his
 
 *288
 
 intentional wrongdoing."
 
 Freedman I
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 647
 
 . This Court disagreed and held as follows:
 

 Here, treating the allegations in appellant's complaint as true as we must at this stage, defendants are at fault for striking a "side-deal" with the prosecutor regarding prison time and federal farm subsidies, and for instructing appellant that he must not disclose the side-deal to the court. Appellant is at fault for lying under oath in federal court by affirming that he was not pleading guilty based on promises not contained in the plea agreement.... Although appellant claims that his complaint does not establish his intentional wrongdoing, we agree with defendants that appellant's complaint shows otherwise. Appellant's complaint reveals the following [allegations]:
 

 34. Ramos returned and told [appellant] that AUSA Williams said the government was not interested in active time and that AUSA Williams had agreed to "stand silent" at sentencing and would not argue for an active sentence.
 

 ...
 

 *691
 
 36. Ramos also told [appellant] that ... AUSA Williams told him that the government did not want to pursue debarment [from federal farm subsidies].
 

 ...
 

 38. Ramos then warned [appellant] that these promises from AUSA Williams were part of a side-deal with Williams-a wink-wink, nudge-nudge-and that [appellant] must not disclose this side-deal to the court, because this would upset Judge Flanagan and would cost [appellant] the chance to assure that he would not be incarcerated.
 

 ...
 

 41. ... [F]aced with the opportunity to avoid incarceration and debarment, ... [appellant] agreed to plead guilty, on the terms as described by Ramos.
 

 ...
 

 *289
 
 43. Ramos and Payne lied to [appellant] and Ms. Pearl about having an undisclosable side-deal, as a result of which [appellant] pled guilty, Ms. Pearl pled guilty on behalf of Freedman Farm[s], and both [appellant] and Freedman Farms became liable for $1,500,000 in fines and restitution.
 

 44. The actual and only plea deal with AUSA Williams was precisely what appeared in the Plea Agreement itself that the government expressly reserve[d] the right to make a sentence recommendation and made no representations as to the effects of the guilty plea on debarment from Federal farm subsidies....
 

 ...
 

 Appellant lied under oath in order to benefit from an alleged side-deal in which he thought he could pay $1,500,000 to avoid going to prison. When the deal unraveled and appellant was bound by the express terms of his plea agreement, appellant attempted to redistribute the loss, which the courts of this State will not do.... Because appellant is in the wrong about the same matter he complains of, the law forbids redress.... Although the underlying criminal prosecution of appellant may have been complex, appellant was able to ascertain the illegality of his actions during the sentencing hearing.... "The allegations of the complaint are discreditable to both parties. They blacken the character of the plaintiff as well as soil the reputation of the defendant. As between them, the law refuses to lend a helping hand. The policy of the civil courts is not to paddle in muddy water, but to remit the parties, when
 
 in pari delicto
 
 , to their own folly. So, in the instant case, the plaintiff must fail in his suit."
 

 Id
 
 . at ----,
 
 784 S.E.2d at 648-49
 
 (quoting
 
 Bean v. Detective Co
 
 .,
 
 206 N.C. 125
 
 , 126,
 
 173 S.E. 5
 
 , 6 (1934) ). Thus,
 
 Freedman I
 
 held as a matter of law that certain allegations in appellant's complaint established that he was
 
 in pari delicto
 
 with defendants. This holding became the law of the case, which we are without authority to revisit. As a result, it is definitively established that those allegations of appellant's complaint that were discussed in
 
 Freedman I
 
 show appellant to be
 
 in pari delicto
 
 with defendants.
 

 *290
 
 Appellant argues that the holding of
 
 Freedman I
 
 applies only to the dismissal of his claim for legal malpractice and does not constitute the law of the case in his appeal from the dismissal of his other claims. It is true that this Court in
 
 Freedman I
 
 did not discuss appellant's claims for breach of contract, breach of fiduciary duty, constructive fraud, or fraud, as those claims were not before this Court. However,
 
 Freedman I
 
 held that appellant was barred from recovering damages for legal malpractice because specific allegations in appellant's complaint showed him to be
 
 in pari delicto
 
 with defendants. The holding of
 
 Freedman I
 
 did not depend upon analysis of appellant's allegations regarding legal malpractice. Instead,
 
 Freedman I
 
 held, without discussion of whether appellant had stated a valid claim against defendants for legal malpractice, that appellant was barred from recovery because, as a matter of law, specific allegations in appellant's complaint established his wrongdoing and therefore implicated the doctrine of
 
 in pari delicto.
 
 The same allegations that were at issue in
 
 Freedman I
 
 are also incorporated into each of appellant's other claims. Under
 
 Freedman I,
 
 these allegations establish both appellant's wrongdoing and also the legal holding that appellant is
 
 in pari delicto
 
 with defendants. This conclusion, which we may not revisit, is independent of the specific allegations regarding the remaining claims.
 

 *692
 
 Appellant also argues that the allegations of his complaint do not support the application of the doctrine of
 
 in pari delicto
 
 to the claims whose dismissal he has appealed. Appellant directs our attention to the fact that these claims are supported by factual allegations that are specific to each claim. In addition, appellant contends that his culpability was less than that of defendants, making application of the doctrine of
 
 in pari delicto
 
 improper. Appellant fails to acknowledge, however, that
 
 Freedman I
 
 held that appellant was
 
 in pari delicto
 
 with defendants based upon specific allegations which are part of each of the claims that were dismissed. We conclude that the trial court did not err by ruling that the holding of
 
 Freedman I
 
 , which became the law of the case, required dismissal of appellant's remaining claims.
 

 IV. Conclusion
 

 For the reasons discussed above, we conclude that the trial court did not err by granting defendants' motions for judgment on the pleadings or by dismissing appellant's claims and that its order should be
 

 AFFIRMED.
 

 Judges BRYANT and INMAN concur.